MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2022 ME 17
Docket:       Kno-21-56
Argued:       November 3, 2021
Decided:      March 15, 2022

Panel:        STANFILL, C.J., and MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.
Majority:     STANFILL, C.J., and MEAD, GORMAN, HUMPHREY, HORTON, and CONNORS, JJ.
Dissent:      JABAR, J.

KAREN S. KLEIN

v.

UNIVERSITY OF MAINE SYSTEM et al.

GORMAN, J.

[¶1]  Karen S. Klein appeals from a summary judgment entered in the Superior Court (Knox County, *Mallonee, J.*) in favor of the University of Maine System and the University of Maine (collectively, the University) on her complaint asserting negligent maintenance and operation of a parking lot located on the University of Maine's Orono campus.  Klein contends that the court erred in determining that the parking lot was not an appurtenance to a public building as that term is used in 14 M.R.S. § 8104-A(2) (2021) of the Maine Tort Claims Act (MTCA) and, therefore, that no exception to the immunity conferred on governmental entities by the MTCA applied.  We affirm the judgment.

## I. BACKGROUND

[¶2] The following facts are undisputed. *See McDonald v. City of Portland*, 2020 ME 119, ¶ 2, 239 A.3d 662. On or about January 6, 2019, Klein drove her vehicle to the University of Maine's Orono campus for the purpose of conducting business at Fogler Library. Klein was instructed by the University to use a parking lot contiguous to Holmes Hall. Fogler Library is located across Moosehead Road from Holmes Hall. The parking lot is used primarily by faculty and staff working at Holmes Hall and by faculty, staff, and visitors using Fogler Library.

[¶3] After parking her vehicle, Klein walked through the parking lot, crossed Moosehead Road, and entered Fogler Library. A few hours later, Klein exited Fogler Library, walked across Moosehead Road, and walked into the parking lot, where she slipped and fell on a patch of untreated ice and sustained injuries. No road construction, street cleaning, or repair was being performed at the parking lot, and the University has no insurance that would cover the incident. *See* 14 M.R.S. § 8116 (2021).

[¶4] After her fall, Klein filed a complaint in the Superior Court alleging that the University was negligent in its maintenance and operation of the parking lot. The University filed a motion for summary judgment, claiming

immunity from Klein's suit pursuant to the MTCA. Klein opposed the motion, arguing that the parking lot fell within the "public building exception" to the MTCA's otherwise comprehensive grant of immunity. *See* 14 M.R.S. §§ 8103(1), 8104-A(2) (2021). On February 5, 2021, the court entered an order granting the University's summary judgment motion on the grounds that the parking lot was not an appurtenance as that term is used in section 8104-A(2) and therefore that no exception to governmental immunity applied. Klein timely appealed. *See* 14 M.R.S. § 1851 (2021); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶5] Klein argues that the court erred by granting the University's motion for summary judgment based on immunity. She contends that the undisputed facts show that the parking lot where she fell was an appurtenance to Holmes Hall and Fogler Library and therefore falls within the "public building exception" to immunity provided by section 8104-A(2).

[¶6] We review a grant of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. *See Picher v. Roman Cath. Bishop of Portland*, 2009 ME 67, ¶ 7, 974 A.2d 286. A grant of summary judgment will be affirmed if there are no genuine issues of material fact and the undisputed facts show that the prevailing party was entitled to a

judgment as a matter of law. *Id.* "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Id.* (quotation marks omitted). "Absent a dispute of material fact, whether or not a governmental entity is entitled to immunity is a question of law that we review de novo." *McDonald*, 2020 ME 119, ¶ 11, 239 A.3d 662.

[¶7] Our main objective in construing a statute is to give effect to the will of the Legislature. *See Est. of Stone v. Hanson*, 621 A.2d 852, 853 (Me. 1993). In determining the Legislature's intent, we look first to the plain language of the statute. *Adoption of Patricia S.*, 2009 ME 76, ¶ 11, 976 A.2d 966. In considering the plain language, however, "we must consider the entire statutory scheme in order to achieve a harmonious result. Finally, [o]nly if the meaning of a statute is not clear will we look beyond the words of the statute to examine other potential indicia of the Legislature's intent, such as the legislative history." *A.S. v. Lincolnhealth*, 2021 ME 6, ¶ 15, 246 A.3d 157 (quotation marks and citation omitted).

[¶8] Governmental immunity is the sole subject of the MTCA, 14 M.R.S. §§ 8101-8118 (2021). The MTCA expressly provides that, as a general rule, governmental entities are immune from suit on any and all tort claims seeking

recovery of damages. *Reid v. Town of Mount Vernon*, 2007 ME 125, ¶ 20, 932 A.2d 539; 14 M.R.S. § 8103(1). The MTCA does, however, include in section 8104-A "a cautious waiver of sovereign immunity by the Legislature in certain carefully circumscribed circumstances." *Searle v. Town of Bucksport*, 2010 ME 89, ¶ 27, 3 A.3d 390. We construe this waiver strictly in order to adhere to the Legislature's directive that immunity for a governmental entity remains the general rule. *See Est. of Fortier v. City of Lewiston*, 2010 ME 50, ¶ 8, 997 A.2d 84 ("In construing section 8104-A, we recognize that the MTCA employs an exception-to-immunity approach rather than an exception-to-liability approach." (quotation marks omitted)).

[¶9] The public building exception to immunity provides that "[a] governmental entity is liable for its negligent acts or omissions in the construction, operation or maintenance of any public building or the appurtenances to any public building." 14 M.R.S. §8104-A(2). The MTCA does not define the term "appurtenance," and we have adopted a restrictive definition of the term, in accordance with "the exacting approach we follow when construing the exceptions to immunity under the MTCA." *Sanford v. Town of Shapleigh*, 2004 ME 73, ¶ 10, 850 A.2d 325. "[F]or purposes of section 8104-A(2), an appurtenance is an object or thing that belongs or is attached to

6

a public building." *Id.* ¶ 11. "In determining whether something 'belongs' to a building . . . we have rejected a function-based approach in favor of using the 'well-established definition of a fixture to determine whether an object [is] an appurtenance.'" *McDonald*, 2020 ME 119, ¶ 15, 239 A.3d 662 (quoting *Searle*, 2010 ME 89, ¶¶ 13-14, 3 A.3d 390). Thus, to be an appurtenance under section 8104-A(2), the object in question must be "(1) physically annexed to the realty, (2) adapted to the realty, and (3) intended to be irremovable from the realty." *McDonald*, 2020 ME 119, ¶ 15, 239 A.3d 662.

[¶10] Klein relies on our recent decision in *McDonald*[1] to support her argument that the parking lot is an appurtenance to Holmes Hall or Fogler Library.[2] *Id*. ¶¶ 15-16. In *McDonald*, we held that a paved brick plaza leading

---

[1] Klein contends that *McDonald v. City of Portland*, 2020 ME 119, 239 A.3d 662, supports her position that the parking lot is an appurtenance on the grounds that we adopted a new "multi-factor balancing test for whether a paved outdoor area contiguous to a public building constitutes an appurtenance." Contrary to Klein's contentions, we neither created nor adopted a new test. We applied existing law by employing the "fixture test" as originally outlined in *Searle v. Town of Bucksport*, 2010 ME 89, ¶¶ 13-22, 3 A.3d 390. *See McDonald*, 2020 ME 119, ¶¶ 15-16, 239 A.3d 662.

[2] Klein also resorts to dictionary definitions of "appurtenance" and out-of-state case law in an attempt to persuade us that it is an object's "irremovable, essential, subordinate-to-principal relationship that dictates whether the area outside a public building is an appurtenance to that building" and, in offering this approach, implicitly argues that we overrule the "fixture test" we laid out in *Searle*, 2010 ME 89, ¶¶ 13-22, 3 A.3d 390. The approach offered by Klein, however, is the very "function-based approach" to determining whether an object is an appurtenance that we have rejected on numerous occasions. *See McDonald*, 2020 ME 119, ¶ 15, 239 A.3d 662; *Sanford v. Town of Shapleigh*, 2004 ME 73, ¶¶ 8-12, 850 A.2d 325. We have already determined that the MTCA "employs appurtenance as a technical term" and have defined "appurtenance" and adopted the "fixture test" to analyze whether an object constitutes an "appurtenance" under that definition. *Sanford*, 2004 ME 73, ¶ 10, 850 A.2d 325; *Searle*, 2010 ME 89, ¶¶ 15-22, 3 A.3d 390 (enumerating the factors of the "fixture test" for analyzing purported appurtenances). In formulating the "fixture test," we expressly considered dictionary definitions and out-of-state case law, along with the express

to the entrance of the Portland Police Department headquarters building was an appurtenance to a public building under section 8104-A(2). *Id.* ¶¶ 16, 22. Applying the three-part definition of a fixture to the facts of that case, we concluded, first, that the plaza was "annexed to the Department building because it serve[d] as the roof to the portion of the building underneath it and [could not] be freely moved or relocated." *Id.* ¶ 16. Second, we concluded that the plaza was "adapted to the unique needs of the Department building" because "the building's lobby would be wholly inaccessible without [it]." *Id*. Third, we concluded that the "annexation and essential nature of the plaza" displayed the City's intent to make it "an irremovable part of the Department building." *Id.* (quotation marks omitted). The fact that the plaza was physically annexed to—formed the roof of a portion of—the Portland Police Department headquarters building was critical to the outcome in *McDonald*. *See id.* ¶ 16.

[¶11] The uncontroverted facts demonstrate that the parking lot here is materially distinguishable from the plaza in *McDonald* because although the parking lot is contiguous to Holmes Hall—in that the parking lot shares a

---

language and the purposes behind the MTCA. *See Sanford*, 2004 ME 73, ¶¶ 9-11, 850 A.2d 325 (considering Black's Law Dictionary and Am. Jur. 2d Vendor and Purchaser § 99 definitions, as informed by the narrow construction of exceptions under the MTCA and the purpose of the MTCA, in defining "appurtenance"); *Searle*, 2010 ME 89, ¶¶ 15-22, 3 A.3d 390. We are unpersuaded by Klein's arguments that we should adopt a new definition of "appurtenance" for purposes of the MTCA, and as such, the "fixture test" as adopted in *Searle* controls here.

8

common border with Holmes Hall—the parking lot is not an object or thing that is "physically annexed to" Holmes Hall or Fogler Library. *Id.* ¶ 15; *see also Annex*, Black's Law Dictionary (11th ed. 2019) (defining "annex" as "[s]omething that is attached to something else, such as . . . an addition to a building"). The parking lot is not attached to either Holmes Hall or Fogler Library nor is it incorporated into these public buildings in any way. *Cf. Rodriguez v. Town of Moose River,* 2007 ME 68, ¶¶ 8, 28 n.3, 38, 922 A.2d 484 (noting that external stairs leading into a public building fall within the definition of an appurtenance); *Donovan v. City of Portland*, 2004 ME 70, ¶ 15, 850 A.2d 319 (referring to "stairs and other building appurtenances").

[¶12]  Because the parking lot is not annexed to either Holmes Hall or Fogler Library, it cannot be "an irremovable part of the . . . building." *McDonald*, 2020 ME 119, ¶ 16, 239 A.3d 662 (quotation marks omitted). Thus, there is no evidence to support two of the three necessary factors.

[¶13]  Even if the parking lot were annexed to one of the public buildings, however, it would not satisfy the remaining factor necessary to the definition of a fixture. The parking lot is not "adapted to the realty" because it is not unique or integral to Holmes Hall or Fogler Library in any way. *See Searle*, 2010 ME 89, ¶¶ 19-20, 3 A.3d 390; *McDonald*, 2020 ME 119, ¶¶ 15-16,

239 A.3d 662. Many buildings border parking areas that facilitate the arrival and departure of visitors to the building, and there is no factual basis upon which to determine that this parking lot serves any special purpose—it does not serve as an entryway to any building, and it has no designated purpose other than parking.

[¶14] The parking lot outside of Holmes Hall and Fogler Library is not an appurtenance as that term is used in section 8104-A(2) because it meets none of the requirements necessary to qualify as a fixture. *See Searle*, 2010 ME 89, ¶¶ 17-22, 3 A.3d 390. To deem a parking area appurtenant to a public building merely because someone parks her vehicle in it to gain access to another public building would constitute an impermissible extension of the statutory exceptions to governmental immunity. *See* 14 M.R.S. § 8104-A(2), (4). Because the parking lot is not an appurtenance, Klein's injury is one for which the University is afforded governmental immunity from suit by section 8103(1). Accordingly, the Superior Court correctly determined that the University is entitled to entry of a summary judgment.

The entry is:

Judgment affirmed.

---

10

JABAR, J., dissenting.

[¶15]  I respectfully dissent because I believe a "function-based approach" is more sensible and practical than a "fixture-based approach" and aligns more closely with the intent of the Legislature when it enacted the Maine Tort Claims Act (MTCA).  Although we have never been asked to decide whether a parking lot meets the definition of "appurtenance," dictum in a previous case indicated that parking lots are not appurtenances.  *See Kitchen v. City of Calais*, 666 A.2d 77, 78 (Me. 1995).  To determine if something is an appurtenance as that term is used in 14 M.R.S. § 8104-A(2) (2021), we have adopted a fixture-based approach, rejecting a function-based approach.  *Sanford v. Town of Shapleigh*, 2004 ME 73, ¶ 11, 850 A.2d 325; *Searle v. Town of Bucksport*, 2010 ME 89, ¶¶ 14-15, 3 A.3d 390.  I believe conducting a fixture analysis is proper when considering whether personal property constitutes an appurtenance, but, as currently employed by the Court, a fixture-based approach unnecessarily limits the definition of appurtenance when considering other things that may be an appurtenance to a building.  This narrow definition is inconsistent with a plain reading of the statute and the legislative history.  Although all fixtures may be appurtenances, all appurtenances are not fixtures.  *Searle*, 2010 ME 89, ¶ 40, 3 A.3d 390 (Jabar, J., dissenting).

## I. DISCUSSION

**A.     Maine Tort Claims Act**

[¶16]  The legislative history of the MTCA demonstrates that the concept of governmental liability, and consequently a remedy for wrongly injured citizens, is equally important to that of governmental immunity.

[¶17]  In 1976, this Court abolished common-law sovereign immunity. *See generally Davies v. City of Bath*, 364 A.2d 1269 (Me. 1976); *Bale v. Ryder*, 286 A.2d 344, 345 (Me. 1972).  Forced into action, the Legislature hastily passed the MTCA in early 1977.  *See* P.L. 1977, ch. 2.  In the same legislative session, the Legislature revised the MTCA two more times.  *See* P.L. 1977, ch. 78, §§ 113-116; P.L. 1977, ch. 578, §§ 1-5A.  The latter enactment added appurtenances to the public building exception to immunity; under the initial stop-gap measure, the public building exception applied only to buildings. *Compare* P.L. 1977, ch. 2, § 2, *with* P.L. 1977, ch. 578, § 2.  Legislators were not concerned with appurtenances and parking lots at that time; instead, they debated whether state employees should automatically receive immunity when the state is also immune from suit.  *See, e.g.*, 2 Legis. Rec. 1644-45 (1977) (remarks of Sens. Mangan, Collins, Curtis, and Merrill).

12

[¶18]  That debate reveals the true legislative purpose of the MTCA.  In the words of Senator Collins:

> There were some who felt that government should have no immunity whatsoever. . . . There were [others] who would not have opened the door to any sort of liability on the part of government, and we said, well, that is not really the best way to go either, because there are a number of civil wrongs that ought to be redressed, and can we find some middle ground.
>
> Well, we did find some middle ground and the middle ground is based on the idea that we should open to liability those areas where insurance can be obtained at a reasonable cost, and we were very attentive to the fact that this involves not only the State of Maine, but all of our cities and towns and districts and so on that are governmental entities.

2 Legis. Rec. 1827 (1977).

[¶19]  The Legislature intended the MTCA to serve as both sword and shield.  It empowers citizens to obtain compensation when they are injured by certain enumerated negligent acts.  The acts are those for which municipalities, in particular, can obtain reasonably priced liability insurance.  In fact, the Legislature specifically studied the cost of liability insurance for municipalities and amended the MTCA to reflect those findings.  *See* 2 Legis. Rec. 1593 (1977) (remarks of Rep. Spencer).

[¶20]  At the same time, the MTCA shields government entities from excessive tort liability.  Both aspects are equally important to our interpretation

of the law, just as both aspects were equally important to the Legislature's forged compromise. As I explain in more detail below, the Court's insistence on narrowly construing exceptions to governmental immunity is wrong partly because it disrupts this balance, which we have recognized before. *See Searle*, 2010 ME 89, ¶ 42, 3 A.3d 390 (Jabar, J., dissenting) ("The Legislature enacted the MTCA to afford citizens a remedy to which they otherwise would not be entitled due to sovereign immunity."); *Rodriguez v. Town of Moose River*, 2007 ME 68, ¶ 34 n.4, 922 A.2d 484 ("The Legislature created the narrow exceptions to governmental immunity under the assumption that governmental entities would acquire insurance to cover liability for claims outside immunity protection . . . .").

## B.    Fixture-based Approach

[¶21]    The Court today makes clear that under the MTCA an appurtenance must be a fixture. Referencing our previous decision in *McDonald v. City of Portland*, 2020 ME 119, ¶¶ 15-16, 239 A.3d 662, the Court says, "We applied existing law by employing the 'fixture test' as originally outlined in *Searle v. Town of Bucksport*, 2010 ME 89, ¶¶ 13-22, 3 A.3d 390." Court's Opinion ¶ 10 n.1. By adopting a fixture-based approach, we have so narrowed the definition of appurtenance that it means only fixtures. I disagree

with the Court's limiting interpretation of the term appurtenance. The plain meaning of the term demonstrates that all appurtenances are not necessarily fixtures. The plain meaning demands additional analysis.

[¶22] The Court's current fixture-based approach does not account for this need. For the purpose of the MTCA, we have defined appurtenance as "an object or thing that belongs or is attached to a public building." *Sanford*, 2004 ME 73, ¶ 11, 850 A.2d 325. Although this definition suggests that things other than fixtures could be appurtenances, it presents a false choice: "the proper analysis" simply asks if a thing that may be an appurtenance is either a fixture or personal property. *See Searle*, 2010 ME 89, ¶¶ 11, 15, 3 A.3d 390. After we defined appurtenance in *Sanford*, 2004 ME 73, ¶ 11, 850 A.2d 325, a majority of this Court later described that case as "apply[ing] the well-established definition of a fixture to determine whether an object was an appurtenance," *Searle*, 2010 ME 89, ¶ 14, 3 A.3d 390. This description is misleading. *Sanford* created a common law definition of appurtenance that was informed by (1) dictionary definitions of appurtenance and appurtenant; (2) a legal treatise's description of appurtenances; and (3) a dictionary definition of fixture. 2004 ME 73, ¶¶ 9-11, 850 A.2d 325. We then applied that common law definition, which more closely resembles the dictionary definition of

appurtenance than it does fixture, to determine if a trash bin was an appurtenance. *Id.* ¶¶ 11-12. Our application of that definition did not even mention the word "fixture." *Id.*

[¶23] I agree that it is necessary to distinguish fixtures from personal property, as was done in *Sanford*, because a governmental entity is not liable "for its negligent acts or omissions in the construction, operation or maintenance" of its personal property. *See* 14 M.R.S. § 8104-A(2). The Court's definition for fixture, as articulated in *Searle*, is well suited to determine if personal property has become a fixture. 2010 ME 89, ¶ 16, 3 A.3d 390. But our prior cases involving the public building exception to immunity have primarily dealt with things that are commonly considered personal property. *See, e.g.*, *id.*, ¶ 15 (bleachers); *Sanford*, 2004 ME 73, ¶ 12, 850 A.2d 325 (freestanding trash bin); *Donovan v. City of Portland*, 2004 ME 70, ¶ 5, 850 A.2d 319 (exterior lighting); *Peterson v. City of Bangor*, 2003 ME 102, ¶¶ 7-8, 831 A.2d 416 (monkey bars); *Petillo v. City of Portland*, 657 A.2d 325, 327 (Me. 1995) (irrigation system) (dicta). *But see McDonald*, 2020 ME 119, ¶¶ 4-5, 239 A.3d 662 (plaza); *Kitchen*, 666 A.2d at 78 ("The City's statement of material facts places the raised, blacktopped curbing in the parking area. A parking area constitutes neither a public building nor an appurtenance to a public building.")

(predating *Sanford*); *Stretton v. City of Lewiston*, 588 A.2d 739, 741 (Me. 1991) (holding that an athletic field is neither a public building nor an appurtenance because it is similar to "a camouflaged underground assault shelter," which "is not a public building within the meaning of the [MTCA]" (citing *Lovejoy v. State*, 544 A.2d 750, 751 (Me. 1988))) (predating *Sanford*).

[¶24]  Here, we are asked for the first time to determine on the merits whether a parking lot—a piece of realty rather than an object or personal property—is an appurtenance to a public building.  A fixture-based approach cannot answer the question.

## C.    Function-based Approach

[¶25]  To correct this limited and narrow view of what constitutes an appurtenance, we should adopt a more sensible and practical function-based approach.  I recognize that we have previously rejected this approach.  In *Sanford*, we "decline[d] to adopt a function-based approach and rel[ied] instead on a more restrictive understanding of the term," despite "acknowledg[ing] that the function-based definition employed by the Superior Court . . . [was] sensible and offer[ed] a practical standard."  2004 ME 73, ¶ 8, 850 A.2d 325.  An examination of the plain language of the MTCA requires us to revisit our rejection of the function-based approach.

### 1.    Plain Language

[¶26]  As the Court notes, our main objective in construing a statute is to give effect to the will of the Legislature.  *Desgrosseilliers v. Auburn Sheet Metal*, 2021 ME 63, ¶ 8, 264 A.3d 1237.  We achieve this objective by first examining the plain language of the statute.  *Wuori v. Otis*, 2020 ME 27, ¶ 6, 226 A.3d 771. When we give statutory language its plain and ordinary meaning, we "have often relied on dictionaries to determine such meanings."  *Rockland Plaza Realty Corp. v. City of Rockland*, 2001 ME 81, ¶ 12, 772 A.2d 256; *see Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79, ¶ 11, 2 A.3d 289.  We also interpret statutory language to avoid absurd, illogical, or inconsistent results. *Jackson Lumber & Millwork Co. v. Rockwell Homes, LLC*, 2022 ME 4, ¶ 10, 266 A.3d 288.

[¶27]  The public building exception to immunity provides that "[a] governmental entity is liable for its negligent acts or omissions in the construction, operation or maintenance of any public building or the appurtenances to any public building."  14 M.R.S. § 8104-A(2).  The Legislature did not define the term appurtenance in the MTCA.

[¶28]  I note here that in our jurisprudence we have inconsistently applied a rule of statutory construction when interpreting this undefined term.

In *Searle*, we said that "[a]s a general rule, words and phrases that are not expressly defined in a statute must be given their plain and natural meaning and should be construed according to their natural import in common and approved usage." 2010 ME 89, ¶ 8, 3 A.3d 390 (quotation marks omitted). In *Sanford*, however, we said that "because the MTCA employs appurtenance as a technical term, we are guided by the rule that technical words and phrases and such as have a peculiar meaning convey such technical or peculiar meaning." 2004 ME 73, ¶ 10, 850 A.2d 325 (alteration and quotation marks omitted). The *Sanford* Court did not explain why it thought the MTCA employed appurtenance as a technical term, nor does either party here, so "the plain meaning of [this undefined] term controls." *State v. York*, 1997 ME 209, ¶ 9, 704 A.2d 324; *Ethyl Corp. v. Adams*, 375 A.2d 1065, 1075 (Me. 1977) ("Since we find no indication that the Legislature intended that the [statutory term] be given a peculiar or technical meaning, we construe it according to the common meaning of the language." (quotation marks omitted)).

[¶29]  To begin with, the Legislature used the term appurtenances, not fixtures. *See* Court's Opinion ¶ 9. We can assume that the Legislature knew the difference between an appurtenance and a fixture. "Fixture" is defined as "[p]ersonal property that is attached to land or a building and that is regarded

as an irremovable part of the real property . . . ." *Fixture*, Black's Law Dictionary (11th ed. 2019); *cf. Personal Property*, Black's Law Dictionary (11th ed. 2019) ("Any movable or intangible thing that is subject to ownership and not classified as real property.").  In contrast, we have noted that appurtenance is defined as "'something that belongs or is attached to something else.'" *Sanford*, 2004 ME 73, ¶ 9, 850 A.2d 325 (quoting *Appurtenance*, Black's Law Dictionary (7th ed. 1999)).  By the plain meaning of the word, then, something can be an appurtenance in one of two ways: either it belongs to something else or it is attached to something else.  A plain reading of the term does not support the conclusion that an appurtenance can be only a fixture.

[¶30]  Furthermore, I note that the Court relies on the rule of statutory construction that says that we consider the entire scheme when construing a statute's plain language.  Court's Opinion ¶ 7.  Accordingly, we have narrowly construed exceptions to immunity and restrictively defined the term appurtenance to give effect to the structure of the MTCA, which "employs an exception-to-immunity approach rather than an exception-to-liability approach." *Est. of Fortier v. City of Lewiston*, 2010 ME 50, ¶ 8, 997 A.2d 84 (quotation marks omitted).  As discussed above, this construction is not consistent with the balance between immunity and liability that the Legislature

diligently crafted. A function-based approach is much more attuned to striking this balance than a fixture-based approach.

### 2. Operation of a Function-based Approach

[¶31] A function-based approach begins with the dictionary definition of appurtenance that we cited in *Sanford*: a thing belongs to—and, thus, is appurtenant to—a public building if that thing is "integral" or "significantly connected" to the building's function or purpose.[3] 2004 ME 73, ¶¶ 5, 9, 850 A.2d 325. We recognized in *Sanford* that appurtenances must be something other than personal property, but we mistakenly limited the definition to fixtures without considering that a parking lot, or similar realty, may be an appurtenance to a building. *Id.* ¶ 11. We explained:

> Appurtenances are things belonging to another thing as principal and which pass as incidents to the particular thing . . . . The term is commonly employed in connection with land conveyances to describe objects or things that pass to a grantee as an incident of the transfer. As used in conveyances, the term passes nothing but the land and such things as belong thereto and are a part of the realty.

---

[3] Alternatively, a thing may be an appurtenance if it is attached to a public building. *See Sanford v. Town Shapleigh*, 2004 ME 73, ¶ 9, 850 A.2d 325. To determine if an object is attached to a public building under a function-based approach, follow the fixture analysis outlined in *Searle*. 2010 ME 89, ¶¶ 16-21, 3 A.3d 390.

*Id.* ¶ 9 (quotation marks and citation omitted) (citing 77 Am. Jur. 2d *Vendor and Purchaser* § 99 (1977)). In other words, an appurtenance belongs to a principal thing if it is incidental to the principal thing. In this context, "incident" means "[d]ependent upon, subordinate to, arising out of, or otherwise connected with." *Incident*, Black's Law Dictionary (11th ed. 2019). An appurtenance is integral or significantly connected to a principal thing if it serves that principal thing's essential purpose.

[¶32] Our recent decision in *McDonald* highlights the practicality of a function-based approach, which we essentially employed to determine whether a plaza was a fixture. *See* 2020 ME 119, ¶ 16, 239 A.3d 662. We used the definition of fixture to determine whether a plaza "'belong[ed]' to" the Portland Police Department and, therefore, was an appurtenance to that public building. *Id.* ¶¶ 1, 15. We held the plaza was an appurtenance because it was (1) annexed to the Department, serving as the roof to a portion of the building; (2) "necessary for the proper function of the building" because the "lobby would be wholly inaccessible without the plaza"; and (3) "'an irremovable part'" of the building as shown by "the annexation and essential nature of the plaza to the functioning of the Department building." *Id.* ¶ 16 (quoting *Searle*, 2010 ME 89, ¶ 22, 3 A.3d 390).

[¶33]  This result was correct under our precedent only because we used a fixture-based approach, but the fact remains that a plaza is obviously not a fixture.  As noted above, a fixture is "[p]ersonal property that is attached to land or a building and that is regarded as an irremovable part of the real property." *Fixture*, Black's Law Dictionary (11th ed. 2019).  The plaza was intended to be irremovable not because of the purpose it serves when attached to the building, but because *it is actually a part of the building. See McDonald*, 2020 ME 119, ¶ 5, 239 A.3d 662.  It never was and never could become freely movable personal property, and therefore it could never become a fixture as that term is commonly understood.  But our reliance upon a fixture-based approach forced us to pretend otherwise.

[¶34]  In contrast, under a function-based approach, we would be free to hold that the plaza was an appurtenance not because it was a fixture but because it served the building's essential purpose by enabling access and acting as a roof to a portion of the building.  *See id.* ¶ 14 ("Our caselaw suggests that whether the plaza is an external part of the building or an appurtenance to the building is a distinction without a difference.").  It is integral to the building's essential purpose because of its function, not because of the legal fiction that it

is a fixture. A function-based approach avoids the absurd fiction that we created in *McDonald*—that a plaza is a fixture.

[¶35] Contrary to what this Court has previously said, a function-based approach does not "expand governmental liability by including personal property integral to the activities undertaken at a public building without regard to whether the property belongs or is attached to the building." *Sanford*, 2004 ME 73, ¶ 11, 850 A.2d 325. Rather, a function-based approach confers the exact degree of liability the Legislature intended by immunizing governmental entities from negligent acts for which insurance is unavailable or too expensive while simultaneously affording citizens a remedy for injuries suffered through no fault of their own. 2 Legis. Rec. 1827 (1977) (remarks of Sen. Collins). A judicially-created, narrowly construed fixture-based approach to the public building exception to immunity results in an interpretation that contradicts the plain meaning of the statute and the clear intent of the Legislature. It expands immunity for the government and frustrates citizens who seek a remedy for injuries caused by the government's negligence. Those fortunate enough to be injured in the government's building will be compensated, while those injured in the government's parking lot will not.

## II. APPLICATION

[¶36]   Adopting a function-based approach here, I would vacate the Superior Court's summary judgment and, based on the record before us, hold that the parking lot is an appurtenance.  The parking lot where Klein slipped on untreated ice is definitely not a fixture because a parking lot does not possess the hallmarks of personal property.  Namely, it is not freely moveable, so it could never make the transition from being personal property to being affixed to a building.

[¶37]   Rather, the summary judgment record demonstrates that the parking lot is an appurtenance because it belongs to two public buildings, Holmes Hall and Fogler Library.  The University stipulated that the parking lot serves these buildings: "The Parking Lot's only function is to facilitate the Public Buildings' operations."  The University also stipulated that the only way to access Fogler Library by vehicle is by using the parking lot and that it maintains the parking lot to facilitate the library's essential functions and operations.  In sum, the parking lot serves the buildings' essential purposes by facilitating access.  Moreover, contrary to the Court's characterization, Court's Opinion ¶ 3, the University stated in its Statement of Material Facts that it has liability

insurance that may cover Klein's injuries, demonstrating that the MTCA is operating as the Legislature intended.

[¶38]  Furthermore, we have previously said that a governmental entity's failure to treat icy conditions could be considered a negligent act or omission in the maintenance of an appurtenance to a public building.  *McDonald*, 2020 ME 119, ¶¶ 16, 21, 239 A.3d 662 (defining "maintenance" as "the care and work put into a property to keep it operating and productive; general repair and upkeep" (quotation marks and alteration omitted)).  Here, the University admitted that it acted negligently when it failed to maintain the parking lot by allowing it to become icy and that its negligence directly caused Klein's injuries. Klein should be entitled to pursue her claim for damages for her injuries. Instead, the Court's interpretation leads to yet another "absurd" result: Klein is not entitled to pursue damages for slipping on ice in a parking lot even though the plaintiff in *McDonald* was entitled to damages for slipping on ice in a plaza. *See id.* ¶ 22.

[¶39]  I point out one last flaw with a fixture-based approach.  The Court contends that the parking lot "is materially distinguishable from the plaza in *McDonald*" because the parking lot is not physically annexed to a public building, it is simply contiguous to one.  Court's Opinion ¶ 11.  The Court

explains that "[t]he fact that the plaza was physically annexed to—formed the roof of a portion of—the Portland Police Department headquarters building was critical to the outcome in *McDonald*." Court's Opinion ¶ 10. However, similar to appurtenance, the Court's own definition of fixture is not limited to something physically annexed to a building. *Searle*, 2010 ME 89, ¶¶ 15-16, 3 A.3d 390. In *Searle*, we defined fixture, in relevant part, as something "physically annexed, *at least by juxtaposition*, to the realty or some appurtenance thereof." *Id.* ¶ 16 (emphasis added). Juxtaposition means "an instance of placing two or more things side by side or near one another." *Juxtaposition*, Black's Law Dictionary (11th ed. 2019). An object can be physically annexed, then, by being actually attached to the building, such as the plaza in *McDonald*, or by being physically annexed by juxtaposition— contiguous, to be concise—such as the parking lot here.

[¶40] I also do not agree that the parking lot is not adapted to the buildings it serves. The parking lot is adapted to the unique needs of Holmes Hall and Fogler Library because, "[u]nlike other parking areas on campus that serve the University's non-specific, at-large parking needs, the Parking Lot is primarily used by faculty and staff working at Holmes Hall; and by faculty, staff, and visitors using the Fogler Library across the street." The University

constructed and maintained the parking lot to facilitate access to these particular public buildings and it "restrict[s] use of the Parking Lot to faculty and visitors who wish to conduct business inside the Public Buildings consistent with [their] essential functions and operations." Indeed, Klein "could not access Fogler Library without first passing through the Parking Lot." The University stipulated to these facts and, as such, they are the "factual basis upon which to determine that this Parking Lot serves [a] special purpose." Court's Opinion ¶ 13. Just as the entrance to the police department in *McDonald* was inaccessible but for the plaza, the entrance to Fogler Library is inaccessible but for the parking lot. Both were specifically designed to facilitate access in the manner intended by the governmental entities that constructed them. The outcomes of these cases should be the same; the different results demonstrate the inherent problem with the fixture-based approach's definition of appurtenance under the MTCA.

## III. CONCLUSION

[¶41] I would change our approach to defining the term appurtenance, replacing the fixture-based approach with a function-based approach. A function-based approach is a sensible, practical approach that accurately reflects the statute's plain language and the intent of the Legislature when it

enacted the MTCA.  I would further hold that the parking lot that serves Holmes Hall and Fogler Library is an appurtenance to those buildings and that Klein is entitled to pursue damages for the injuries caused by the University's failure to maintain the parking lot.

_____

William C. Herbert, III, Esq., and Sean V. Walton, Esq. (orally), Hardy Wolf & Downing, P.A., Lewiston, for appellant Karen S. Klein

Christopher C. Dinan, Esq., and Laura A. Maher, Esq. (orally), Monaghan Leahy, LLP, Portland, for appellees University of Maine System and University of Maine

Knox County Superior Court docket number CV-2020-16
FOR CLERK REFERENCE ONLY