MAINE SUPREME JUDICIAL COURT					Reporter of Decisions
Decision:	2022 ME 40
Docket:	Fra-21-264
Argued:	March 9, 2022
Decided:	June 28, 2022

Panel:		MEAD, JABAR, HORTON, and CONNORS, JJ.*
Majority:	MEAD, HORTON, and CONNORS, JJ.
Dissent:	JABAR, J.

ERIC BADLER

v.

UNIVERSITY OF MAINE SYSTEM

HORTON, J.

[¶1]  Eric Badler appeals from a summary judgment entered by the Superior Court (Franklin County, *Mills, A.R.J.*) in favor of the University of Maine System on Badler's claim of negligence based on an injury he sustained from an industrial kitchen mixer.  The court concluded that the University is immune from suit, but Badler contends that the court erred because the mixer falls within the "[o]ther machinery or equipment" exception to immunity under the Maine Tort Claims Act (MTCA).  14 M.R.S. § 8104-A(1)(G) (2022).  Because we agree with the court that the mixer is not within that exception, we affirm.

---

\* Although Justice Gorman participated in the appeal, she retired before this opinion was certified.

## I. BACKGROUND

[¶2]  The following facts are drawn from the parties' supported statements of material fact and are viewed in the light most favorable to Badler. *See Connary v. Shea*, 2021 ME 44, ¶ 3, 259 A.3d 118.  Badler was employed as a baker by Sodexo, a company that provides food and dining services to the University of Maine System.  While working at the University's Farmington campus on November 4, 2017, Badler severely injured his right index finger while using an industrial, motorized kitchen mixer, which was supplied and owned by the University.  The bowl that the University provided for use with the mixer was incompatible with the mixer.  Badler's injury occurred when the bowl became dislodged and its sharp-edged handle cut his finger.  As a result of the injury, Badler required significant medical treatment and has experienced pain, lost wages, and permanent impairment.

[¶3]  Badler filed a complaint on October 29, 2019, alleging that the University acted negligently in providing him with a dangerous mixer, which resulted in a severe injury to his finger.  The University moved for summary judgment, claiming immunity from liability based on the MTCA, 14 M.R.S. §§ 8101-8118 (2022).  Badler opposed the motion, arguing that the University was not immune because the alleged negligent act fell within the MTCA's

exception for negligence related to the University's "ownership, maintenance or use of . . . [o]ther machinery or equipment, whether mobile or stationary." *Id.* § 8104-A(1). On August 5, 2021, the court entered an order granting the University's motion for summary judgment against Badler, concluding that the University was immune under the MTCA because the mixer did not fall within the section 8104-A(1)(G) exception. Badler timely appealed.[1] *See* 14 M.R.S. § 1851 (2022); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶4] The sole issue on appeal is whether the court erred in granting the University's motion for summary judgment based on its conclusion that the mixer is not within the MTCA's exception for negligence related to "[o]ther machinery or equipment, whether mobile or stationary." 14 M.R.S. § 8104-A(1)(G).

[¶5] "We review a grant of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party." *Klein v. Univ. of Me. Sys.*, 2022 ME 17, ¶ 6, 271 A.3d 777. "A grant of summary judgment will be affirmed if there are no genuine issues of material fact and the undisputed facts show that the prevailing party was entitled to a judgment as a

---

[1] The Maine Trial Lawyers Association filed an amicus brief in support of Badler.

matter of law." *Id.* "Absent a dispute of material fact, whether or not a governmental entity is entitled to immunity is a question of law that we review de novo." *McDonald v. City of Portland*, 2020 ME 119, ¶ 11, 239 A.3d 662.

[¶6] "The MTCA provides immunity to all governmental entities from suit on all tort claims seeking recovery for damages, except as otherwise expressly provided by statute." *New Orleans Tanker Corp. v. Dep't of Transp.*, 1999 ME 67, ¶ 4, 728 A.2d 673 (quotation marks omitted). In crafting the MTCA, the Legislature took an "exception-to-immunity" approach, instead of an "exception-to-liability" approach, and we have thus construed the exceptions narrowly. *Id.* ¶ 5 (quotation marks omitted); *see Klein*, 2022 ME 17, ¶ 8, 271 A.3d 777 ("We construe this waiver strictly in order to adhere to the Legislature's directive that immunity for a governmental entity remains the general rule."). Title 14 M.R.S. § 8104-A(1) provides such an exception:

> **1. Ownership; maintenance or use of vehicles, machinery and equipment.** A governmental entity is liable for its negligent acts or omissions in its ownership, maintenance or use of any:
>
> > **A.** Motor vehicle, as defined in Title 29-A, section 101, subsection 42;
> >
> > **B.** Special mobile equipment, as defined in Title 29-A, section 101, subsection 70;
> >
> > **C.** Trailers, as defined in Title 29-A, section 101, subsection 86;

**D.** Aircraft, as defined in Title 6, section 3, subsection 5;

**E.** Watercraft, as defined in Title 12, section 1872, subsection 14;

**F.** Snowmobiles, as defined in Title 12, section 13001, subsection 25; and

**G.** Other machinery or equipment, whether mobile or stationary.

[¶7] We have on several occasions addressed the meaning of section 8104-A(1)(G)'s provision concerning "[o]ther machinery or equipment, whether mobile or stationary." In *McNally v. Town of Freeport*, we held that a hypodermic syringe used to draw blood from the plaintiff did not fall within the section 8104-A(1)(G) exception. 414 A.2d 904, 905-06 (Me. 1980). We "cautiously applied the interpretive principle of *ejusdem generis* in which the meaning of general words of a phrase is limited to things or items of the same general class as those expressly mentioned." *New Orleans Tanker*, 1999 ME 67, ¶ 7, 728 A.2d 673. Accordingly, we explained that, to fall within the exception, a device "must, as a result of its negligent ownership, maintenance or use, create a risk of injury to person or property comparable to the risk created by the negligent ownership, maintenance or use of the specifically enumerated

items of machinery and equipment" in section 8104-A(1)(A) through (F). *McNally*, 414 A.2d at 906.

[¶8]  In *New Orleans Tanker*, we concluded that a drawbridge leaf did not fall under the "[o]ther machinery or equipment" exception.  1999 ME 67, ¶¶ 2, 14, 728 A.2d 673.  We noted that the items enumerated in section 8104-A(1)(A) through (F) have qualities in common:

> It is readily apparent that the listed items in section 8104-A(1)(A) through (F) are items capable of transportation.  They are mobile and likely to come into contact with the general public.  Most are fairly ordinary transportation devices with which people have a fair degree of familiarity. Accidents with these items are common, and insurance is readily available. . . .
>
> . . . The major risk from the negligent use of vehicles with the power to move is that they will be driven or transported in locations where the general public is exposed to the possibility of a collision and resulting harm.

*New Orleans Tanker*, 1999 ME 67, ¶¶ 8-9, 728 A.2d 673.  We declined to determine precisely how the phrase "whether mobile or stationary" affects the meaning of the "[o]ther machinery or equipment" exception, but we explained that the phrase does not enlarge the exception "such that the phrase encompasses all the innumerable machines and equipment which governmental units could conceivably own or use." *Id.* ¶ 11.

[¶9]  We have interpreted section 8104-A(1)(G) on other occasions, but none of them involved machinery or equipment that presented a risk of injury remotely similar to that presented by the machines and equipment listed in sections (A) through (F). *See Reid v. Town of Mount Vernon*, 2007 ME 125, ¶¶ 4, 25-27, 932 A.2d 539 (in-ground dumpster); *Petillo v. City of Portland*, 657 A.2d 325, 327 (Me. 1995) (golf course sprinkler system); *J.R.M., Inc. v. City of Portland*, 669 A.2d 159, 161 (Me. 1995) (fire protection system); *Harris v. City of Old Town*, 667 A.2d 611, 612-13 (Me. 1995) (railroad tracks).

[¶10]  In arguing that the kitchen mixer falls under the "[o]ther machinery or equipment" exception, Badler effectively asks us both to depart from our precedent and to ignore our obligation to construe the MTCA's exceptions to immunity strictly. *See, e.g.*, *New Orleans Tanker*, 1999 ME 67, ¶ 5, 728 A.2d 673.  Under Badler's interpretation of the statute, a governmental entity would be liable for injury caused by virtually any machine or piece of equipment with a motor.  But if the Legislature had intended the "[o]ther machinery or equipment" exception to reach so broadly, it would have had no reason to enumerate separately the motorized machines and equipment in subsections (A) through (F) of section 8104-A(1).  In other words, Badler's interpretation would convert most of section 8104-A(1) into surplusage.  *See*

8

*Riemann v. Toland*, 2022 ME 13, ¶ 28, 269 A.3d 229 ("[N]o words [in a statute] are to be treated as surplusage if they can be reasonably construed." (quotation marks omitted)).

[¶11]  We cannot conclude that a kitchen mixer falls within the same general class as the items enumerated in section 8104-A(1)(A) through (F). Other than being a machine, the mixer does not meet the criteria we defined in *New Orleans Tanker*: it is not a transportation device, it is unlikely to be transported, it is unlikely to come into contact with the general public, and it is unlikely to be covered by an insurance policy.[2]  *See New Orleans Tanker*, 1999 ME 67, ¶¶ 8-9, 728 A.2d 673.

[¶12]  The mixer also poses a risk of injury different from the risk associated with the items in section 8104-A(1)(A) through (F). *See New Orleans*

---

[2]  We note that the provision for "[s]pecial mobile equipment" in 14 M.R.S. § 8104-A(1)(B) (2022) supports our view that the waiver of immunity contained in section 8104-A(1) is limited to risks involving motor vehicles and other transportation-related equipment:

> "Special mobile equipment" means a *motor vehicle* with permanently mounted equipment not designed or used primarily for the transportation of persons or property.  "Special mobile equipment" includes, but is not limited to, road construction or maintenance machinery, ditch-digging apparatus, stone crushers, air compressors, power shovels, cranes, graders, rollers, trucks used only to plow snow and for other duties pertaining to winter maintenance, including sanding and salting, well drillers and wood-sawing equipment or similar types of equipment.

29-A M.R.S. § 101(70) (2022) (emphasis added); *see* 14 M.R.S. § 8104-A(1)(B).  The Legislature plainly did not intend for the waiver of immunity to apply to air compressors, well drillers, or wood saws (or industrial kitchen mixers) unless they were mounted to motor vehicles for transportation purposes.

*Tanker*, 1999 ME 67, ¶ 9, 728 A.2d 673.  Although a mixer does pose a risk of injury, that risk is inherently different than the risk associated with, for example, a motor vehicle.  *See* 14 M.R.S. § 8104-A(1)(A).

[¶13]  Badler contends that the phrase "whether mobile or stationary" within section 8104-A(1)(G) supports his argument that our interpretation of the "[o]ther machinery or equipment" exception is unduly narrow, but we do not agree.  The phrase might simply mean that transportation-related machinery or equipment need not be moving at the relevant time in order for the exception to immunity to apply.  In any case, we have said previously that the phrase "whether mobile or stationary" does not enlarge the meaning of section 8104-A(1)(G) so as to encompass all machinery or equipment.  *New Orleans Tanker*, 1999 ME 67, ¶ 11, 728 A.2d 673.  Because the mixer does not pose a similar risk and is not in "the same general class as [the items] expressly mentioned" in 14 M.R.S. § 8104-A(1)(A) through (F), *New Orleans Tanker*, 1999 ME 67, ¶ 7, 728 A.2d 673, the mixer that caused Badler's injury is not within the "[o]ther machinery or equipment, whether mobile or stationary" exception to immunity, 14 M.R.S. § 8104-A(1)(G).

[¶14]  Our conclusion comports with over forty years of precedent.  That the Legislature has never amended 14 M.R.S. § 8104-A(1)(G) in light of that

longstanding precedent speaks for itself.  Accordingly, in keeping with both our precedent and our duty to construe exceptions to the MTCA strictly, we affirm.

The entry is:

Judgment affirmed.

---

JABAR, J., dissenting.

## I.  INTRODUCTION

[¶15]  I respectfully dissent because the Court, following the holding in *New Orleans Tanker Corp. v. Dep't of Transp.*, unnecessarily limits the scope of the exception to immunity in 14 M.R.S. § 8104-A(1)(G) (2022) to items related to transportation.  1999 ME 67, ¶¶ 8-9, 728 A.2d 673; Court's Opinion ¶ 11. I echo the concerns set out in the dissent of Justices Dana and Alexander in *New Orleans Tanker* regarding this limitation of the scope of immunity to items related to transportation.  There, Justice Dana wrote that

> [t]he Court limits equipment in section 8104-A(1)(G) to items capable of transportation and thereby renders our traditional test analyzing the risks resulting from negligent use superfluous. . . . Pursuant to this Court's analysis . . . if an item is incapable of transportation, then it does not fall within section 8104-A(1)(G) and our traditional "risk analysis" is unnecessary.

*New Orleans Tanker*, 1999 ME 67, ¶ 18, 728 A.2d 673 (Dana, J., dissenting).

[¶16]  Today, the Court follows the approach of *New Orleans Tanker* and limits the analysis to items related to transportation.  The Court states that

> [o]ther than being a machine, the mixer does not meet the criteria we defined in *New Orleans Tanker*: it is not a transportation device, it is unlikely to be transported, it is unlikely to come into contact with the general public, and it is unlikely to be covered by an insurance policy.

Court's Opinion ¶ 11.  I believe this approach is too limited and is not mandated by the statute, legislative history, or case law.

## II.  DISCUSSION

### A.    General Public

[¶17]  The Court first states that the industrial kitchen mixer that injured Badler does not fall under the exception to immunity established in section 8104-A(1)(G), in part because the mixer "is unlikely to come into contact with the general public."  Court's Opinion ¶ 11.  Nowhere in the MTCA does the statute condition immunity on whether the item comes into contact with the public.  *See* 14 M.R.S. §§ 8103, 8104-A (2022).  Instead, the Court cites *New Orleans Tanker* for this proposition.  Court's Opinion ¶ 11.  In that case, the Court described the listed items in section 8104-A(1)(A)-(F) as "likely to come into contact with the general public" and concluded that "[t]he general public does not come into contact with . . . bridge leaf machinery in the same way that

12

the public comes into contact with governmental vehicles of the type enumerated in the statute." *New Orleans Tanker*, 1999 ME 67, ¶¶ 8-9, 728 A.2d 673.

[¶18] This case highlights the flaw with this aspect of the analysis. Here, Badler was employed by Sodexo, a company that provides food and dining services to the University. Badler is not a University employee, but neither is he a student, faculty member, or guest of the University. The record does not establish his precise role, so this reason should not serve as a bar to compensation, especially when the MTCA does not condition liability on whether the injured party is a member of the general public.

## B.    Availability of Insurance

[¶19] The Court then asserts, again relying on *New Orleans Tanker*, that the industrial mixer is not likely covered by an insurance policy. Court's Opinion ¶ 11; *see New Orleans Tanker*, 1999 ME 67, ¶ 8, 728 A.2d 673. The record reveals, however, that the University was insured under a "United Educators Buffer Excess Liability Insurance Policy." The availability of liability insurance should be a crucial factor for courts to consider when determining whether a governmental entity is immune from suit. "The Legislature intended the MTCA to serve as both sword and shield. It empowers citizens to obtain

compensation when they are injured by certain enumerated negligent acts. The acts are those for which [governmental entities] . . . can obtain reasonably priced liability insurance. . . . At the same time, the MTCA shields government entities from excessive tort liability." *Klein v. Univ. of Me. Sys.*, 2022 ME 17, ¶¶ 19-20, 271 A.3d 777 (Jabar, J., dissenting). This intent is evident from the MTCA's legislative history. The entire act was premised on a compromise between those law makers who believed that the government should be entitled to no immunity whatsoever and those who believed that the government should never be exposed to liability. *Id.* ¶ 18. "'[T]he middle ground [was] based on the idea that we should open to liability those areas where insurance can be obtained at a reasonable cost, and we were very attentive to the fact that this involves not only the State of Maine, but all of our cities and towns and districts and so on that are governmental entities.'" *Id.* (quoting 2 Legis. Rec. 1827 (1977) (remarks of Sen. Collins)). Because the record here demonstrates that the University has a buffer liability insurance policy, Badler should have the opportunity to recover damages for his injury, a result the Legislature clearly intended when it passed the MTCA.[3]

---

[3] I recognize that this Court has upheld the use of insurance policy provisions that do not provide coverage for claims from which a governmental entity is immune under the Maine Tort Claims Act. *See, e.g.*, *Doucette v. City of Lewiston*, 1997 ME 157, ¶¶ 7-10, 697 A.2d 1292 ("By limiting coverage to 'those areas for which governmental immunity has been expressly waived,' and by stating that

14

## C. Risk Analysis

[¶20] Finally, the Court disregards our traditional risk analysis by unduly focusing on the dissimilarities between the items enumerated in 14 M.R.S. § 8104-A(1)(A) through (F) and the industrial mixer that injured Badler. In *McNally*, *Petillo*, *Harris*, and *J.R.M.*, we stated that, when determining if a governmental entity is liable pursuant to 14 M.R.S. § 8104-A(1)(G) ("Other machinery or equipment, whether mobile or stationary"), the proper analysis compares the risk of injury to people or property created by the tortious object to the risk of injury created by the items enumerated in section 8104-A(1)(A)-(F). *McNally v. Town of Freeport*, 414 A.2d 904, 906 (Me. 1980); *Petillo v. City of Portland*, 657 A.2d 325, 327 (Me. 1995); *Harris v. City of Old Town*, 667 A.2d 611, 613 (Me. 1995); *J.R.M., Inc. v. City of Portland*, 669 A.2d 159, 161 (Me. 1995). None of these cases limited the analysis by requiring the tortious object to be associated with transportation. *See McNally*, 414 A.2d at 906 (applying risk test to hypodermic needle); *Petillo*, 657 A.2d at 327

---

coverage 'shall not be deemed a waiver of any immunities or limitation of damages available under the [MTCA], other Maine statutory law, judicial precedent, or common law,' the City has preserved its immunity from suit."); *Maynard v. Comm'r of Corr.*, 681 A.2d 19, 23-24 (Me. 1996); *Webb v. Haas*, 665 A.2d 1005, 1011 (Me. 1995). Pursuant to section 8116, governmental entities waive immunity when they procure liability insurance in areas where they are otherwise immune. 14 M.R.S. § 8116 (2022); *Webb*, 665 A.2d at 1011 & n.9. That section is the statutory culmination of the legislative compromise that enabled the Legislature to pass the MTCA. In my view, the use of these insurance policy provisions erodes the intended operation of the MTCA.

(watering system); *Harris*, 667 A.2d at 613 (railroad tracks); *J.R.M.*, 669 A.2d at 161 (fire protection system).

[¶21]   Admittedly, *Harris* and *J.R.M.* muddy the analysis because, in addition to citing the risk test from *McNally*, the Court also compared the tortious object itself to other objects.  *See Harris*, 667 A.2d at 613 (comparing railroad tracks to "the specific items enumerated in section 8104-A(1)(A)-(F)"); *J.R.M.*, 669 A.2d at 161 (comparing a fire protection system to "a hypodermic syringe [and] a golf course sprinkler system" (citation omitted)).  The proper analysis, as mentioned above, compares the risk posed by the tortious object to the risk posed by the items enumerated in section 8104-A(1)(A)-(F).  Put another way, the analysis compares risk to risk, not risk to object or object to object.  My concern, therefore, lies with the Court's requirement that an object be "a transportation device" for it to fall within the meaning of subsection (G).  Court's Opinion ¶ 11.  That prerequisite has never been a part of our risk analysis.  *McNally*, 414 A.2d at 906 ("[F]or a device to come within the meaning of § 8104(1)(G) it must, as a result of its negligent ownership, maintenance or use, create a risk of injury to person or property comparable to the risk created by the negligent ownership, maintenance or use of the specifically enumerated items of machinery and equipment.").

16

[¶22]  Moreover, as this Court has previously noted, Delaware modeled its governmental immunity statute on the Maine Tort Claims Act.[4]  *New Orleans Tanker*, 1999 ME 67, ¶ 13, 728 A.2d 673; *Fiat Motors of N. Am. v. Wilmington*, 498 A.2d 1062, 1067 n.8 (Del. 1985).  In *New Orleans Tanker*, this Court cited the Delaware case *Triple C Railcar Serv. v. City of Wilmington* to support the proposition that 14 M.R.S. § 8104-A(1) should be construed narrowly.  *New Orleans Tanker*, 1999 ME 67, ¶ 13, 728 A.2d 673 (citing *Triple C Railcar Serv. v. City of Wilmington*, 630 A.2d 629, 630-32 (Del. 1993).  However, *Triple C* does not limit immunity to items related to transportation; instead, Delaware law provides "that governmental immunity should not extend to negligent use and operation of equipment which presents risks to the public because of its *high mobility or inherent dangerousness*."  *Triple C*, 630 A.2d at 632 (emphasis added).  Contrary to the Court's opinion in *New Orleans Tanker*, the application of Delaware case law would support a broader interpretation of 14 M.R.S. § 8104-A(1) because it includes inherently dangerous objects that are unrelated to transportation.  *See New Orleans Tanker*, 1999 ME 67, ¶¶ 21-22,

---

[4]  The analogous Delaware provision to 14 M.R.S. § 8104-A(1) (2022) provides that "[a] governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage, bodily injury or death in . . . its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary." Del. Code Ann. tit. 10, § 4012(1) (LEXIS through 83 Del. Laws, ch. 301).

728 A.2d 673 (Dana, J. dissenting); *see also*, *e.g.*, *Porter v. Delmarva Power & Light Co.*, 488 A.2d 899, 905-06 (Del. Super. Ct. 1984) (holding that an electric transmission line constituted "other machinery or equipment, whether mobile or stationary").

[¶23] Furthermore, Delaware premised its tort-claims-act case law on *McNally*, which is at odds with *New Orleans Tanker* and this Court's decision today. *See*, *e.g.*, *Sadler v. New Castle Cnty.*, 565 A.2d 917, 923 (Del. 1989); *Fiat Motors*, 498 A.2d at 1067 n.8. In *McNally* we said, "All definitions are perilous. Particularly since the legislative history of this statute is far from clear. . . ." 414 A.2d at 906 & n.3. That reasoning remains true today and supports the use of a risk-based test for determining whether an object should fall within the catch-all provision of section 8104-A(1)(G).

[¶24] I would vacate the trial court's order and remand to the trial court to consider whether the risk of injury resulting from the negligent operation of the industrial mixer is comparable to the risk of injury arising from the negligent operation of the items enumerated in section 8104-A(1). The trial court did not undertake any such analysis and instead limited its discussion to whether the motorized industrial mixer was related to transportation. In deciding this mixed question of fact and law, the trial court should have

considered at least the following risk-based factors: whether the industrial mixer is motorized, how big it is, how a person interacts with it, and the type of injuries the operator is likely to sustain if the mixer malfunctions.

---

Christiane D. Williams, Esq. (orally), Mann Law, LLC, Yarmouth, for appellant Eric Badler

Laura A. Maher, Esq. (orally), Monaghan Leahy, LLP, Portland, for appellee University of Maine System

Stephen W. Koerting, Esq., and Shea H. Watson, Esq., Kelly, Remmel & Zimmerman, Portland, for amicus curiae Maine Trial Lawyers Association

Franklin County Superior Court docket number CV-2019-21
FOR CLERK REFERENCE ONLY