MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 119
Docket:      Cum-19-494
Argued:      September 15, 2020
Decided:     October 13, 2020

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, and CONNORS, JJ.

ROBIN MCDONALD et al.

v.

CITY OF PORTLAND

CONNORS, J.

[¶1]  The City of Portland appeals from the denial by the Superior Court (Cumberland County, *O'Neil, J.*) of its motion for summary judgment on immunity grounds in a suit brought by Robert Pelletier and his wife, Robin McDonald, based on injuries that Pelletier allegedly received after falling on ice outside of the Portland Police Department.  Because the plaza where he fell is an appurtenance to a public building within the meaning of the Maine Tort Claims Act, 14 M.R.S. § 8104-A(2) (2020), we affirm.

## I.  BACKGROUND

[¶2]  The following facts are undisputed.  On February 17, 2017, Pelletier slipped and fell on a patch of ice after exiting the lobby of the Portland Police Department headquarters building.  Pelletier fell approximately six to eight feet

from the door of the building. The area where he fell is a brick-paved plaza that extends from the entrance of the building to Middle Street and to a parking garage. The plaza is partially open to the sky above; a portion of the building's auditorium overhangs the area where Pelletier fell.

[¶3] The entire area underneath the plaza is part of the Portland Police Department headquarters building. That part of the building is used as a holding pen and a parking area for command staff and an evidence technician truck, and it is accessed through an overhead door that faces Middle Street.

[¶4] The plaza is used by pedestrians for access to the Department building, a parking garage, and Middle Street. Department staff use the plaza to park motorcycles and bicycles; however, such parking is not allowed in the area of the plaza where Pelletier fell. People also use the plaza to eat lunch outside.

[¶5] Photographs of the plaza, with a marking indicating where Pelletier fell, appear in the record, some of which appear below as Figures 1, 2, and 3.



*Figure 1*



*Figure 2*

4



Figure 3

[¶6]  McDonald and Pelletier filed a complaint against the City in 2018, claiming negligence and loss of consortium.  The City asserted a number of affirmative defenses, including that it was immune from suit because the claims did not fall within an exception to immunity contained in the Maine Tort Claims Act.  The City sought summary judgment on that ground, and McDonald and Pelletier opposed the motion, arguing that it should be denied as a matter of

law, or, alternatively, that it should be denied because of purported issues of material fact regarding the design, use, and purpose of the plaza.[1]

[¶7] On November 21, 2019, the court entered an order denying the City's motion. Without elaboration, the court concluded that there were unidentified "material issues of fact in dispute regarding whether or not the fall took place in an appurtenance to a government building which would be an exception to immunity." The City timely appealed. *See* 14 M.R.S. § 1851 (2020); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

A.      Reviewability of the Summary Judgment Motion

[¶8] Appeals from the denial of a motion for summary judgment are "generally barred by the final judgment rule." *Rodriguez v. Town of Moose River*, 2007 ME 68, ¶ 16, 922 A.2d 484. "We have consistently held, however, that the denial of a motion for summary judgment based on a claim of immunity is immediately reviewable pursuant to an exception to the final judgment rule." *J.R.M., Inc. v. City of Portland*, 669 A.2d 159, 160 (Me. 1995); *see also Polley v.*

---

[1] McDonald and Pelletier appear to have abandoned their argument that there is a genuine dispute of material fact that precludes resolution of the immunity issue but nevertheless contend that the undisputed facts do not entitle the City to summary judgment as a matter of law. *See* M.R. App. P. 2C(a)(1) ("An appellee may, without filing a cross-appeal, argue that alternative grounds support the judgment that is on appeal.").

*Atwell*, 581 A.2d 410, 412 (Me. 1990) (noting that "because immunity is . . . immunity from suit rather than a mere defense to liability," it "is effectively lost if a case is erroneously permitted to go to trial" (emphasis omitted) (quotation marks omitted)). Pursuant to this exception, we will reach the merits of an appeal "[e]ven when the trial court decides that there is a dispute of material fact" so long as the parties do not dispute the facts material to the legal question of immunity. *Rodriguez*, 2007 ME 68, ¶¶ 16-17, 922 A.2d 484; *Paschal v. City of Bangor*, 2000 ME 50, ¶¶ 1 & n.1, 11, 747 A.2d 1194.

[¶9] In this case, although the court denied the City's motion for summary judgment on the basis that there were "material issues of fact in dispute regarding whether or not the fall took place in an appurtenance to a government building which would be an exception to immunity," the parties do not dispute the location of Pelletier's fall, the characteristics of the plaza, or the uses of the plaza, and do not otherwise contend that there are genuine disputes of material fact. The question of whether the plaza is a public building or an appurtenance to a public building is therefore a legal question, not a factual one. *See Tolliver v. Dep't of Transp.*, 2008 ME 83, ¶ 10 n.5, 948 A.2d 1223 (explaining that although the issue of immunity can be "intertwined with the facts of a case," the availability of immunity pursuant to the Maine Tort Claims Act "generally

turns on the proper interpretation of the statute, absent a dispute of material fact, and is therefore a question of law").[2]  Accordingly, we reach the merits of the City's appeal.  *See Rodriguez*, 2007 ME 68, ¶¶ 16-17, 922 A.2d 484; *Paschal*, 2000 ME 50, ¶¶ 1 & n.1, 11, 747 A.2d 1194.

B.      The Public Building Exception to Immunity

[¶10]  The City argues that the undisputed facts show that the plaza where Pelletier fell does not fall into the public building exception to sovereign immunity, and, therefore, both Pelletier's claim and McDonald's derivative loss of consortium claim should be disposed of on immunity grounds.  *See Brown v. Crown Equip. Corp.*, 2008 ME 186, ¶ 23, 960 A.2d 1188 (holding "that loss of consortium claims necessarily arise from the same negligent act as the underlying tort claims and are therefore subject to the same rules and limitations").

[¶11]  "We review a denial of a motion for summary judgment based on a claim of immunity for errors of law, viewing the evidence in the light most favorable to the nonmoving party."  *Rodriguez*, 2007 ME 68, ¶ 19, 922 A.2d 484.

---

[2]  If there were a genuine dispute of material fact that affected the resolution of the legal question of whether the plaza falls within an exception to the Maine Tort Claims Act, we would be unable to review the denial of the City's motion for summary judgment.  *See Wilcox v. City of Portland*, 2009 ME 53, ¶ 14, 970 A.2d 295 ("Denial of a motion for summary judgment based on the determination that the immunity issues cannot be resolved until fact-finding occurs is not a ruling subject to an interlocutory appeal before the trial court can make the necessary fact-findings.").

8

Absent a dispute of material fact, whether or not a governmental entity is entitled to immunity is a question of law that we review de novo. *See Tolliver*, 2008 ME 83, ¶¶ 10 n.5, 11, 948 A.2d 1223.

[¶12]  Governmental immunity is codified in the Maine Tort Claims Act (MTCA), 14 M.R.S. §§ 8101-8118 (2020).  The MTCA provides as a general rule that "all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." *Id.* § 8103(1).  This immunity, however, is limited by several exceptions, including the public building exception, which states that "[a] governmental entity is liable for its negligent acts or omissions in the construction, operation or maintenance of any public building or the appurtenances to any public building." *Id.* § 8104-A(2).  Exceptions to immunity, such as the public building exception, "are strictly construed so as to adhere to immunity as the general rule." *See Searle v. Town of Bucksport*, 2010 ME 89, ¶ 9, 3 A.3d 390.

[¶13]  As an initial matter, there appears to be no dispute that the Department building—being accessible to the public, owned by the City, and serving a public function—is a public building within the meaning of the MTCA. *See Rodriguez*, 2007 ME 68, ¶ 32, 922 A.2d 484 ("A 'public building' is a building that is accessible to the public; especially one owned by the government."

(alterations omitted) (quotation marks omitted)). Additionally, McDonald and Pelletier do not contend that the plaza is itself a public building. Such an argument would be unavailing given that the plaza, which is outdoors and only partially enclosed, lacks the rudimentary characteristics of a building. *See Searle,* 2010 ME 89, ¶ 10, 3 A.3d 390 (recognizing that "definitions of the term building indicate an edifice enclosed by walls and covered by a roof"); *Reid v. Town of Mount Vernon*, 2007 ME 125, ¶ 22, 932 A.2d 539 (noting that an open area transfer station could not be considered a building); *Adriance v. Town of Standish*, 687 A.2d 238, 240 (Me. 1996) (holding that a "permanent, *fully enclosed*" transfer station was a public building (emphasis added)).

[¶14] Rather, McDonald and Pelletier contend that the plaza is *part* of the Department building, such that together they make up a single public building, or, alternatively, that the plaza is an appurtenance to the building. Our caselaw suggests that whether the plaza is an external part of the building or an appurtenance to the building is a distinction without a difference. *See Rodriguez*, 2007 ME 68, ¶ 28 n.3, 922 A.2d 484 (describing an external set of stairs leading into a public building as part of the building and also as an appurtenance).

[¶15] In accordance with section 8104-(A)(2), "an appurtenance is an object or thing that belongs or is attached to a public building, and does not include personal property maintained outside the building." *Sanford v. Town of Shapleigh*, 2004 ME 73, ¶ 11, 850 A.2d 325. In determining whether something "belongs" to a building, however, we have rejected a function-based approach in favor of using the "well-established definition of a fixture to determine whether an object [is] an appurtenance." *Searle*, 2010 ME 89, ¶¶ 13-14, 3 A.3d 390. Thus, to be an appurtenance, the object in question must be a fixture rather than personal property. *Id.* ¶ 14. A fixture is something that is (1) physically annexed to the realty, (2) adapted to the realty, and (3) intended to be irremovable from the realty. *Id.* ¶¶ 15-23. In contrast, personal property is any "movable or intangible thing that is subject to ownership and not classified as real property." *Id.* ¶ 15 (quotation marks omitted).

[¶16] The plaza at issue in this case falls squarely within the definition of a fixture for several reasons. First, the plaza is annexed to the Department building because it serves as the roof to the portion of the building underneath it and cannot be freely moved or relocated. *See id.* ¶¶ 17-18. Second, the plaza is adapted to the unique needs of the Department building in that it is necessary for the proper function of the building—as McDonald and Pelletier point out,

the building's lobby would be wholly inaccessible without the plaza. *See id.* ¶¶ 19-20. Third, the annexation and essential nature of the plaza to the functioning of the Department building show that the City had the "requisite intent to make" the plaza "an irremovable part" of the Department building. *Id.* ¶¶ 21-22. Accordingly, the plaza falls within the definition of an appurtenance for the purposes of 14 M.R.S. § 8104-A(2). *Compare Searle*, 2010 ME 89, ¶¶ 17-23, 3 A.3d 390 (holding that easily-disassembled, generic bleachers that were not annexed to the land were personal property, not appurtenances to a public high school), *and Sanford*, 2004 ME 73, ¶ 12, 850 A.2d 325 (holding that a freestanding trash bin outside of a waste facility building was personal property, not an appurtenance), *with Rodriguez*, 2007 ME 68, ¶ 28 n.3, 922 A.2d 484 (noting that external stairs leading into a public building fall within the definition of an appurtenance), *and Donovan v. City of Portland*, 2004 ME 70, ¶ 15, 850 A.2d 319 (describing "stairs" as "appurtenances").

[¶17] The City does not vigorously argue that the plaza fails to meet this three-part test. Instead, it contends that the plaza cannot be an appurtenance because it is essentially used as a parking area and/or sidewalk. *See* 14 M.R.S. § 8104-A(4) ("A governmental entity is not liable for any defect, lack of repair or lack of sufficient railing in any . . . sidewalk, parking area, . . . or in any

appurtenance thereto."); *see also Kitchen v. City of Calais*, 666 A.2d 77, 78-79 (Me. 1995) ("A parking area constitutes neither a public building nor an appurtenance to a public building. A contrary interpretation would make the provisions of sections 8104-A(2) and (4) redundant.").

[¶18] The MTCA does not define the terms "parking area" and "sidewalk," *see* 14 M.R.S. §§ 8101-8118, and we have never expressly defined them. "As a general rule, words and phrases that are not expressly defined in a statute must be given their plain and natural meaning," unless doing so would result in "absurd, illogical, or inconsistent results." *Searle*, 2010 ME 89, ¶ 8, 3 A.3d 390 (quotation marks omitted).

[¶19] Although there is no dispute that Department staff use part of the plaza to park motorcycles and bicycles, the City conceded that such parking is not permitted on the part of the plaza where Pelletier fell. Thus, the area of the plaza where Pelletier fell does not fit within the "plain and natural meaning" of the phrase "parking area." *Id.*; *cf. Kitchen*, 666 A.2d at 78-79 (holding that a "blacktopped area where vehicles are parked" with curbing "to keep vehicles from parking too close to" a public building was a parking area within the meaning of section 8104-A(4) rather than an appurtenance). Moreover, even if the entire plaza—which is physically part of the Department building and

serves several different purposes—did fit within the plain meaning of the phrase "parking area," to hold that a government entity can defeat the public building exception to immunity by simply allowing staff to park motorcycles or bicycles on what would otherwise be an appurtenance would be an absurd or illogical result. *Cf. Blue Yonder, LLC v. State Tax Assessor*, 2011 ME 49, ¶ 19, 17 A.3d 667 (declining to adopt an "absurd" interpretation of a statute that "would permit avoidance of [a] use tax simply by transporting property outside of Maine once within twelve months after its out-of-state purchase").

[¶20]   Similarly, the plaza does not fit within the plain and natural meaning of the word "sidewalk."   *See Sidewalk*, The American Heritage Dictionary of the English Language (5th ed. 2016) (defining "sidewalk" to mean "[a] paved walkway *along the side of a street*" (emphasis added)); *Sidewalk*, New Oxford American Dictionary (3d ed. 2010) (defining "sidewalk" to mean "a paved path for pedestrians *at the side of a road*" (emphasis added)); *Sidewalk*, Webster's Third New International Dictionary (2002) (defining "sidewalk" to mean "a walk for foot passengers *usu[ally] at the side of a street or roadway*: a foot pavement" (emphasis added)); *cf. Donovan*, 2004 ME 70, ¶¶ 4, 9, 12, 15, 850 A.2d 319 (suggesting that an area leading from a parking lot toward a public school was a sidewalk).

14

[¶21]   Finally, the City contends that even if the plaza is part of the Department building, McDonald's and Pelletier's claims do not stem from the City's negligent maintenance or operation of the building, but rather the City's "failure to treat ice on a walkway" and, therefore, their claims do not trigger an exception to immunity.   *See, e.g., ABT & A Co. v. State*, 644 A.2d 460, 460 (Me. 1994) (holding that the public building exception was inapplicable where claims were based on the State's supervision of prisoners rather than the "operation or maintenance" of a correctional facility).   Contrary to the City's argument, the City's failure to treat the icy conditions of the plaza could be considered a "negligent act[] or omission[]" in the "maintenance" of the plaza.[3] 14 M.R.S. § 8104-A(2); *see Maintenance*, Black's Law Dictionary (11th ed. 2019) (defining "maintenance" to mean "[t]he care and work put into a property to keep it operating and productive; general repair and upkeep"); *Isaacson v. Husson Coll.*, 297 A.2d 98, 104 (Me. 1972) ("[T]he defendant was not substantially impeded in its *maintenance* of the pathways and area ways free and clear of snow." (emphasis added)); *Denman v. Peoples Heritage Bank, Inc.*,

---

[3]   Like the terms "parking area" and "sidewalk," the MTCA does not define "maintenance," *see* 14 M.R.S. §§ 8101-8118 (2020), and we have never expressly defined it.  Accordingly, we must give it its "plain and natural meaning." *Searle v. Town of Bucksport*, 2010 ME 89, ¶ 8, 3 A.3d 390 (quotation marks omitted).

1998 ME 12, ¶¶ 1-2, 704 A.2d 411 (describing "snow and ice removal" as part of a "*maintenance* contract" (emphasis added)).

[¶22] In summary, although the court erred when it found that there was a genuine dispute of material fact that precluded resolution of the question of immunity, the undisputed facts show that the plaza falls within the public building exception to governmental immunity and that the City is therefore not immune from McDonald's and Pelletier's claims. Accordingly, we affirm the denial of the City's motion for summary judgment on that alternative basis. *See Sears, Roebuck & Co. v. State Tax Assessor*, 2012 ME 110, ¶ 13, 52 A.3d 941 (noting that we may affirm a judgment on grounds different from the trial court's reasoning); *Jorgensen v. Dep't of Transp.*, 2009 ME 42, ¶ 21, 969 A.2d 912 (declining to "disturb the trial court's denial of a summary judgment in favor of the Department based on discretionary function immunity" after concluding that the Department was not entitled to such immunity).

The entry is:

Judgment affirmed.

John J. Wall, III, Esq. (orally), Monaghan Leahy, LLP, Portland, for appellant City of Portland

Gerard P. Conley, Jr., Esq., and Kenneth Hovermale, Esq. (orally), Cloutier, Conley & Duffett, P.A., Portland, for appellees Robin McDonald and Robert Pelletier

Cumberland County Superior Court docket number CV-2018-366
FOR CLERK REFERENCE ONLY