MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2025 ME 60
Docket:      And-23-238
Argued:      March 6, 2024
Decided:     July 8, 2025

Panel:       STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.*
Majority:    MEAD, HORTON, CONNORS, LAWRENCE, and LIPEZ, JJ.
Dissent:     STANFILL, C.J., and DOUGLAS, JJ.

JOSH RINALDI

v.

MAINE CORRECTIONAL CENTER et al.

MEAD, J.

[¶1]  The Maine Department of Corrections, Maine Correctional Center, and State of Maine (collectively, the State) appeal from the Superior Court's (Androscoggin County, *Stewart, J.*) entry of partial summary judgment in favor of Josh Rinaldi, concluding that the State lacked immunity from suit under the Maine Tort Claims Act (MTCA) for injuries that Rinaldi suffered when he fell at the Maine Correctional Center.  *See* 14 M.R.S. §§ 8101-8118 (2025).  On appeal, the State contends that the trial court erred by ruling that it was not immune under the MTCA because Rinaldi's accident fell within the MTCA's "public

---

  * Although not present at oral argument, Justice Lipez participated in this appeal.  *See* M.R. App. P. 12(a)(2).

2

building" exception. Specifically, the State argues that the trial court erred by ruling that (1) the correctional center or some of its buildings constitute a "public building" under the MTCA, *id.* § 8104-A(2), and (2) the outdoor space where Rinaldi fell is an "appurtenance" under the MTCA to at least one of those public buildings. *Id.*

[¶2] Based upon the undisputed facts, we conclude that the paved area where Rinaldi fell is not an appurtenance to correctional-center buildings and thus was not subject to the public-building exception to the MTCA.[1] Therefore, we must vacate the judgment of the Superior Court.

## I. FACTUAL BACKGROUND

[¶3] Because this case comes to us on appeal from a summary judgment, the scope of our review of the factual background is limited to the four corners of the summary judgment record. *See Lubar v. Connelly*, 2014 ME 17, ¶ 34, 86 A.3d 642. The facts relevant to this appeal are not disputed by the parties.

[¶4] Rinaldi was an inmate at the Maine Correctional Center from August 2020 to April 2021. On the morning of February 28, 2021, Rinaldi was called to breakfast at the correctional center's dining hall. To get from his

---

[1] Because we conclude that the "runway" paved area in question is not an appurtenance to any MCC building, we need not decide whether any of the buildings on the correctional center property are "public buildings" for the purposes of the MTCA.

dormitory to the cafeteria, Rinaldi needed to walk along an outdoor paved road, referred to as the "Runway," running through the center of the correctional center. On his trip back to the dormitory from breakfast, Rinaldi slipped on a patch of ice on the Runway and broke his right ankle. At the time of Rinaldi's fall, the Runway had not been treated with salt or sand.

[¶5] The Maine Correctional Center complex is fully surrounded by a locked, gated fence. Some of the buildings within the complex have entries onto the Runway, and Rinaldi and other inmates use the Runway numerous times a day to move about the facility. While some of the correctional center's buildings have entries that do not connect to the Runway, the entries can be used only by prison employees, not by inmates. Nothing in the summary judgment record suggests that there is some form of structural connection between the Runway and the correctional center's buildings or fence and gates.[2]

[¶6] Apart from being the path that inmates use to traverse the correctional center, the Runway is also used for inmate recreation and by various vehicles, such as delivery, maintenance, and construction vehicles.

---

[2] At oral argument, counsel for Rinaldi did not dispute that there was no architectural or structural system that physically connected the Runway to any of the buildings.

4

Volunteers and professional visitors also occasionally use the Runway, but regular visitors, such as individuals visiting inmates, do not use the Runway.

## II. PROCEDURAL POSTURE

[¶7]  Rinaldi filed a twelve-count complaint on October 26, 2022, asserting various tort claims in connection with his accident at the correctional center.  On November 15, 2022, the State filed an answer with affirmative defenses, asserting that it was not liable for Rinaldi's injury under the doctrine of governmental immunity as provided by the MTCA and that no exception applies to the facts of this case.  On April 3, 2023, Rinaldi filed a motion for partial summary judgment and a statement of material facts, both of which specifically concerned the State's affirmative defenses that it was not liable under the MTCA, and he argued that the State was not immune under the MTCA due to an exception to immunity that applies when the tort claim stems from an injury sustained in or on an appurtenance to a public building.  14 M.R.S. § 8104-A(2).  The State filed its opposition, a cross-motion for partial summary judgment, and its own statement of material facts on May 5, 2023,[3] and Rinaldi

---

[3] The State's cross-motion also sought summary judgment on certain other grounds, some related to the MTCA and some not.  Only the issues of whether the correctional center is a public building and whether the Runway is an appurtenance are raised in this appeal, and we therefore do not discuss the other grounds in the State's cross-motion.

filed his reply on May 26, 2023.

[¶8] On June 15, 2023, the trial court granted Rinaldi's motion for partial summary judgment and denied the State's cross-motion, ruling that "the MCC is a public building under the MTCA" and the Runway "must be characterized as an appurtenance to the MCC buildings." The State timely appealed, challenging the court's ruling that the State was not immune from liability for Rinaldi's injuries. *See* M.R. App. P. 2B(c)(1).

### III. DISCUSSION

[¶9] Although "[a]ppeals from the denial of a motion for summary judgment are generally barred by the final judgment rule," we have "consistently held . . . that the denial of a motion for summary judgment based on a claim of immunity is immediately reviewable pursuant to an exception." *McDonald v. City of Portland*, 2020 ME 119, ¶ 8, 239 A.3d 662 (quotation marks omitted); *see also Polley v. Atwell*, 581 A.2d 410, 412 (Me. 1990) (explaining that this exception to the final judgment rule exists "because immunity is an entitlement of an immunity from suit rather than a mere defense to liability and is effectively lost if a case is erroneously permitted to go to trial" (alteration and quotation marks omitted)). Accordingly, we reach the merits of this appeal.

6

[¶10]  In its brief, the State argues that it was error for the trial court to grant Rinaldi partial summary judgment because the State is immune from suits sounding in tort liability under the MTCA and Rinaldi's accident did not fall under any of the exceptions to the MTCA.

[¶11]  The material facts relevant to the status of the Runway for purposes of the MTCA are not in dispute.  "Absent a dispute of material fact, whether or not a governmental entity is entitled to immunity is a question of law that we review de novo." *Klein v. Univ. of Me. Sys.*, 2022 ME 17, ¶ 6, 271 A.3d 777 (quotation marks omitted).

## A.    The Maine Tort Claims Act

[¶12]  The MTCA provides that, "[e]xcept as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages."  14 M.R.S. § 8103(1); *see McDonald*, 2020 ME 119, ¶ 12, 239 A.3d 662.  The governmental immunity is limited by several exceptions in the MTCA, including the public-building exception at issue here, which provides that "[a] governmental entity is liable for its negligent acts or omissions in the construction, operation or

maintenance of any public building or the appurtenances to any public building." 14 M.R.S. § 8104-A(2); *McDonald*, 2020 ME 119, ¶ 12, 239 A.3d 662.

[¶13] Importantly, we have consistently held that the exceptions in the MTCA "reflect[] a cautious waiver of sovereign immunity by the Legislature in certain carefully circumscribed circumstances." *Searle v. Town of Bucksport*, 2010 ME 89, ¶ 27, 3 A.3d 390. Therefore, "[e]xceptions to immunity, such as the public building exception, 'are strictly construed so as to adhere to immunity as the general rule.'" *McDonald*, 2020 ME 119, ¶ 12, 239 A.3d 662 (quoting *Searle*, 2010 ME 89, ¶ 9, 3 A.3d 390); *see also Klein*, 2022 ME 17, ¶ 8, 271 A.3d 777 (holding that exceptions to the immunity created by the MTCA are construed strictly "in order to adhere to the Legislature's directive that immunity for a governmental entity remains the general rule"); *Est. of Fortier v. City of Lewiston*, 2010 ME 50, ¶ 8, 997 A.2d 84 ("[T]he MTCA employs an exception-to-immunity approach rather than an exception-to-liability approach. Accordingly, our analysis starts from the premise that immunity is the rule and exceptions to immunity are to be strictly construed." (alteration, citation, and quotation marks omitted)); *Sanford v. Town of Shapleigh*, 2004 ME 73, ¶ 10, 850 A.2d 325 ("Sovereign immunity is the rule, and liability for

8

governmental entities is the statutorily created narrowly construed exception."
(alterations and quotation marks omitted)).

**B.     Appurtenance to a Public Building**

[¶14]  The State argues that the trial court erred in holding that under the
MTCA the Runway is an appurtenance to the correctional center's buildings.
*See* 14 M.R.S. § 8104-A(2).  We agree.

[¶15]   The MTCA does not define "appurtenance," but we have
established that the common test for determining whether something is a
"fixture" may also be used to determine whether something is an
"appurtenance" within the meaning of the MTCA.  *See McDonald*, 2020 ME 119,
¶ 15, 239 A.3d 662.  Under that test, "to be an appurtenance under section
8104-A(2), the object in question must be '(1) physically annexed to the realty,
(2) adapted to the realty, and (3) intended to be irremovable from the realty.'"
*Klein*, 2022 ME 17, ¶ 9, 271 A.3d 777 (quoting *McDonald*, 2020 ME 119, ¶ 15,
239 A.3d 662).

[¶16]  We have previously clarified each of the three elements of the
appurtenance test.  *See Searle*, 2010 ME 89, ¶¶ 16-21, 3 A.3d 390.

- First, "[p]hysical annexation occurs when an object is affixed to the realty,
  *see Bangor-Hydro Elec. Co. v. Johnson*, 226 A.2d [371,] 376 [(Me. 1967)],
  or simply through the object's sheer weight."  *Id*. ¶ 17 (citing *Hinkley
  & Egery Iron Co. v. Black*, 70 Me. 473, 480 (1880)).

- Second, adaptation occurs "when the object and the real property 'are united in the carrying out of a common enterprise.'" *Id*. ¶ 19 (quoting *Lewiston Bottled Gas Co. v. Key Bank of Me.*, 601 A.2d 91, 94 (Me. 1992)). "Items of personal property are united to the realty 'if they contribute to the purposes of the realty in the sense that they are necessary or useful for the proper operation or utilization of the realty.'" *Id*. ¶ 19 (quoting 8, *Powell on Real Property* § 57.05[4](a) (Michael Allan Wolf ed., 2006)). Adaptation is most clearly demonstrated by the design, manufacture, or modification of the object for use on the realty. *See id*. ¶ 20.

- Third, whether the object is intended to be irremovable is established by a broad objective analysis of the totality of the circumstances. *Thayer Corp. v. Me. Sch. Admin. Dist. 61*, 2012 ME 37, ¶ 7, 38 A.3d 1263. To determine intent, courts may consider, inter alia,

  (1) [t]he mode of annexation;

  (2) [t]he removability of the article without injury to the premises;

  (3) [t]he extent to which the article is specially adapted to the premises;

  (4) [t]he extent to which the owner has treated the article as an essential part of the premises; and

  (5) [t]he actual essentiality of the article to the accustomed use or operation of the premises.

  *Searle*, 2010 ME 89, ¶ 21, 3 A.3d 390 (alteration and quotation marks omitted); *see* 8, *Powell on Real Property* § 57.05[5](b)).

If these elements are established, the item in question is an appurtenance under

the MTCA.

10

[¶17]  We have recently considered two cases that turned on whether something was an appurtenance to a public building, and our holdings in those cases are illustrative of how we analyze the three elements of the appurtenance test.  *See generally Klein*, 2022 ME 17, 271 A.3d 777; *McDonald*, 2020 ME 119, 239 A.3d 662.

[¶18]  In *McDonald*, we were asked to determine whether a plaza from which one could enter and exit a police station, which was occasionally used for parking and also functioned as the roof of part of the station, was an appurtenance to the station.  2020 ME 119, ¶¶ 2-5, 14, 239 A.3d 662.  Applying the three-element test, we held,

> The plaza at issue in this case falls squarely within the definition of a fixture for several reasons.  First, the plaza is annexed to the Department building because it serves as a roof to the portion of the building underneath it and cannot be freely moved or relocated.  Second, the plaza is adapted to the unique needs of the Department building in that it is necessary for the proper function of the building—as . . . the building's lobby would be wholly inaccessible without the plaza.  Third, the annexation and essential nature of the plaza to the functioning of the Department building show that the City had the requisite intent to make the plaza an irremovable part of the Department building.  Accordingly, the plaza falls within the definition of an appurtenance for the purposes of [the MTCA].

*Id*. ¶ 16 (citations and quotation marks omitted).

[¶19]   In *Klein*, we considered whether a parking lot contiguous to multiple University of Maine buildings was an appurtenance to those buildings. 2022 ME 17, ¶¶ 2-3, 9-14, 271 A.3d 777.  Again applying the three-element test, we distinguished the parking lot from the plaza in *McDonald* by saying that, unlike the plaza in *McDonald*, which served as a roof to the police station,

> although the parking lot is contiguous to Holmes Hall—in that the parking lot shares a common border with Holmes Hall—the parking lot is not an object or thing that is physically annexed to Holmes Hall or Fogler Library.  The parking lot is not attached to either Holmes Hall or Fogler Library nor is it incorporated into these public buildings in any way.

*Id*. ¶ 11 (citations and quotation marks omitted).  Having determined that the parking lot was not physically annexed to the buildings, we held that "it cannot be an irremovable part of the building.  Thus, there is no evidence to support the [first or third] of the three necessary factors" of the test.  *Id*. ¶ 12 (alteration, citation, and quotation marks omitted).  We went on to note that, while the fact that the parking lot was not annexed to the buildings was dispositive of the case, the parking lot was also "not adapted to the realty because it is not unique or integral to Holmes Hall or Fogler Library in any way . . . . *[I]t does not serve as an entryway to any building, and it has no designated purpose other than parking*."  *Id*. ¶ 13 (quotation marks omitted) (emphasis added).

[¶20]  We now consider each of the three elements of the fixture test in order to determine whether the Runway should be considered an appurtenance to any of the buildings of the correctional center.

### 1. Physically Annexed to the Realty

[¶21]  There is no evidence in the record that shows that the Runway is physically annexed to any of the correctional center's buildings.[4]  Unlike the plaza in *McDonald*, which served as the roof of the police station it was appurtenant to, the Runway does not serve as an exterior or interior part of any of the buildings.  *See McDonald*, 2020 ME 119, ¶¶ 2-5, 239 A.3d 662.  The Runway is more akin to the parking lot in *Klein*, because it is not a physical part of or connected to any of the correctional center buildings but rather runs between several of them, and, like the parking lot, is, at best,[5] contiguous to one or more of them.[6]  2022 ME 17, ¶ 11, 271 A.3d 777 ("[A]lthough the parking lot

---

[4] Counsel conceded as much during oral argument.  *See supra* n.2.

[5] The summary judgment record includes a map depicting a top-down view of the Runway among the correctional center buildings, which shows the Runway to be contiguous to only one building. The record also includes two photos, which do not clearly show whether the Runway is contiguous to any of the correctional center's buildings, as the space between what is visible of the Runway and the correctional center buildings is obscured by snow.  Additionally, in its reply to Rinaldi's statement of material facts, the State characterized the Runway as "less an 'area' than a paved road running through the center" of the correctional center, which further suggests that it may not even be contiguous to the buildings.

[6] We do not hold, as the dissent suggests in ¶¶ 33-34, that physical annexation is the single, determinative criterion in evaluating a structure's status as an appurtenance.  Rather, it is the first

is contiguous to Holmes Hall—in that the parking lot shares a common border with Holmes Hall—[it] is not . . . physically annexed to Holmes Hall." (quotation marks omitted)).

[¶22]  Rinaldi argues that because the Runway is so massive that its "weight alone would prevent it from being freely relocated" and because it is "contiguous to multiple [correctional center] buildings," we should consider it to be physically annexed to the buildings.  However, Rinaldi does not meaningfully explain how this circumstance is distinguishable from the circumstances in *Klein*, where the parking lot was contiguous to a university building, and, like the Runway, was a large, paved space.[7] *Id.* ¶ 2.  Indeed, the reason the parking lot in *Klein* was not considered annexed to the realty was that it was not attached to the *public building*, which provides the nexus for the immunity exception under the MTCA.  *Id.* ¶¶ 11-12; 14 M.R.S. § 8104-A(2).  The sheer weight of the parking lot in *Klein* may have affixed it to the ground, but it

---

element and one of several factors that are considered in analyzing the third element of the *Searle* test, which we have appropriately applied.

 [7] Rinaldi does argue that the facts in this case are distinguishable from *Klein* because the Runway is contiguous to multiple correctional center buildings, while in *Klein* the parking lot was contiguous to only one.  *See Klein v. Univ. of Me. Sys.*, 2022 ME 17, ¶ 11, 271 A.3d 777.  This argument is unpersuasive, as the number of buildings an object is contiguous to was not dispositive in *Klein*, where we noted that the fact that the parking lot was "contiguous to Holmes Hall" did not make the parking lot "physically annexed to Holmes Hall." *Id*. (quotation marks omitted).  Accordingly, that the Runway might be contiguous to more than one building has no relevance to whether the Runway is physically annexed to any of those buildings.

14

did not affix the lot to the university buildings. *Klein*, 2022 ME 17, ¶¶ 11-12, 271 A.3d 777; *c.f. Searle*, 2010 ME 89, ¶ 17, 3 A.3d 390. That same relationship exists here between the Runway and the correctional center's buildings. Thus, even though the Runway may be contiguous to the correctional center's buildings, it is not annexed to them.

### 2. Adapted to the Realty

[¶23] The evidence also does not suggest that the Runway is adapted to the buildings of the correctional center. Like the parking lot in Klein, the Runway "facilitates the arrival and departure" of inmates to the correctional center's buildings. *Klein*, 2022 ME 17, ¶ 13, 271 A.3d 777. There is no evidence in the summary judgment record that the Runway was specially designed, manufactured, or modified for use with any of the correctional center buildings, or to differentiate it from any other paved surface located within or outside of the correctional center. *See Searle*, 2010 ME 89, ¶ 20, 3 A.3d 390. Furthermore, unlike the plaza in *McDonald*, the record suggests that there are other entrances to the correctional center buildings, and therefore the buildings would not be "wholly inaccessible" without the Runway.[8] *McDonald*, 2020 ME 119, ¶ 16,

---

[8] Unlike the parking lot in *Klein*, the Runway does serve as an entrance to many of the correctional center buildings, and serves several additional purposes beyond just parking. But again, the evidence

239 A.3d 662.  Without question, the Runway is not *adapted* to the realty in any way connected to the correctional center's buildings other than the fact that it is an improved road or pathway that leads to some buildings on the correctional center complex.[9]  We conclude that the State is entitled to summary judgment because the undisputed facts show as a matter of law—as provided by the MTCA and our jurisprudence—that the State is immune because the Runway is not "adapted to the realty."

### 3. Intended to Be Irremovable from the Realty

[¶24]  Finally, nothing in the record suggests that the Runway was intended to be irremovable from the realty.  The simple fact that the Runway is not annexed to the correctional center's buildings means that it is not physically irremovable.  *See Klein*, 2022 ME 17, ¶ 12, 271 A.3d 777 ("Because the parking lot is not annexed to either [building], it cannot be an irremovable part of the

---

does not show that the Runway functions as the sole entrance to the correctional center's buildings, or that the Runway was designed, constructed, or modified in any way to serve the buildings.

[9]  The dissent unsurprisingly cannot point to any special adaptations existing on the Runway—there are none.  It is simply and undeniably a generic, paved surface that leads to buildings.  *See* Dissenting Opinion ¶ 37.  The dissent further posits that simply because the Runway provides "inmate movement through the facility," it is "essential to the correctional center's operation" and therefore qualifies as an appurtenance. Dissenting Opinion ¶ 37.  In both instances, the Runway is no different than any of the innumerable improved avenues throughout the state that lead to governmental buildings.  Neither the MTCA nor our jurisprudence casts a net so wide as to capture a vast expanse of governmental liability that includes improved paths or ways that merely provide convenient pedestrian or vehicular travel to governmental buildings.

building[s]." (alteration and quotation marks omitted)). Considering the broader five-factor intent analysis that we have used, *see Searle*, 2010 ME 89, ¶ 21, 3 A.3d 390, the record does not show that (1) the Runway is annexed to the correctional center's buildings, (2) removal of the Runway would cause damage to the correctional center's buildings, or (3) the Runway is at all specially adapted to the correctional center's buildings. As to factor (4), the record suggests that the State has treated the Runway as an essential part of the premises because it is used as the predominant path of movement for inmates between the correctional center's buildings, but regardless, under factor (5), the Runway is not actually essential for the operation of the premises, because other doors to the buildings exist and the removal of the Runway would not make movement around the correctional center impossible.

[¶25] In sum, the Runway does not satisfy any of the three elements of the fixture test. Although "[t]here is no single criterion by which an object can be deemed a fixture," *Id.* ¶ 16, we have held that the failure to satisfy even one of the three elements of the fixture test results in a determination that the object in question is not a fixture, *Thayer Corp.*, 2012 ME 37, ¶ 8, 38 A.3d 1263 (holding that where an object "was physically annexed to the building in which it was housed, *and* . . . was specifically adapted to the needs of the [building] . . .

[but] was not intended [to] become a permanent part of" the realty, it is "not a fixture" (emphasis added)); *see also Klein*, 2022 ME 17, ¶ 12, 271 A.3d 777 (referring to the "three *necessary* factors" (emphasis added)). Because the Runway does not satisfy any of the three elements of the fixture test, and because we must strictly construe any exceptions to governmental immunity, we conclude that the Runway is not an appurtenance to the correctional center's buildings. *See McDonald*, 2020 ME 119, ¶ 12, 239 A.3d 662; *Searle*, 2010 ME 89, ¶ 27, 3 A.3d 390 ("The MTCA reflects a cautious waiver of sovereign immunity by the Legislature in certain carefully circumscribed circumstances. . . . Changes to [such] legislated policies are for the legislative branch; the courts are delimited by the language of the statute and the dictates of the common law.").[10]

---

[10]  The dissent puts forward an interpretation of the MTCA and departure from our well-established jurisprudence that would significantly expand governmental exposure to tort liability. If the Runway, which is no more than a paved route that persons can use to traverse the MCC grounds and to approach buildings, is deemed an appurtenance, then every street, thoroughfare, or paved pathway that currently provides a travel route to the door of any state, county, municipal, or other governmental building would, according to the logic of the dissent, be deemed to be an appurtenance to a building for which the governmental entity owning the building may not assert immunity.

As noted previously, exceptions to sovereign immunity are to be strictly construed. The Legislature is aware of our existing jurisprudence, and although it unquestionably has the prerogative to modify current immunity laws along the lines the dissent suggests, it has shown no inclination to so.

18

[¶26]  Accordingly, the trial court erred in finding that the Runway was an appurtenance within the meaning of the MTCA, and therefore in concluding that Rinaldi's claim falls within the MTCA's "public building" exception to immunity.

The entry is:

> Judgment granting Josh Rinaldi's motion for partial summary judgment is vacated. Remanded to the Superior Court for entry of summary judgment in favor of the Department of Corrections, Maine Correctional Center, and the State of Maine.

---

STANFILL, C.J., with whom DOUGLAS, J. joins, dissenting.

[¶27]  In its opinion, the Court continues to unnecessarily narrow the public-building exception to immunity under the Maine Tort Claims Act (MTCA).  *See* 14 M.R.S. § 8104-A(2) (2025).  Because I believe the summary judgment record leads to the conclusion that the Runway is an appurtenance to a public building, I respectfully dissent.

[¶28]  The statute creating an exception to immunity provides that "[a] governmental entity is liable for its negligent acts or omissions in the construction, operation or maintenance of any public building or the

appurtenances to any public building." *Id.* § 8104-A(2). It does not say that a governmental entity is liable for its negligent acts or omissions in the operation or maintenance of only appurtenances that are physically attached to a public building, but that is now the holding of the Court.

[¶29] We adopted the "fixture" test when determining whether items of personal property could be considered appurtenances. *See Sanford v. Town of Shapleigh*, 2004 ME 73, 850 A.2d 325 (trash bin); *Searle v. Town of Bucksport*, 2010 ME 89, 3 A.3d 390 (bleachers next to a football field). That approach makes sense in the context of personal property, but it does not adequately account for other appurtenances that may be part of the realty. *See Klein v. Univ. of Me. Sys.*, 2022 ME 17, ¶ 15, 271 A.3d 777 (Jabar, J. dissenting) ("[A] fixture analysis is proper when considering whether personal property constitutes an appurtenance, but . . . a fixture-based approach unnecessarily limits the definition of appurtenance when considering other things that may be an appurtenance to a building.").

[¶30] We have said that "an appurtenance is an object or thing that *belongs or is attached* to a public building." *Sanford*, 2004 ME 73, ¶ 11, 850 A.2d 325 (emphasis added). I agree. In *Klein*, the plaintiff left the Fogler Library on the University of Maine campus and slipped and fell in the parking lot across

the road near Holmes Hall. 2022 ME 17, ¶ 3, 271 A.3d 777. We appropriately held that the parking lot was not an appurtenance to a public building. *Id.* ¶ 14. However, we departed from the language of the statute and our caselaw by using overly-broad language, saying that the parking lot was not an appurtenance to a public building because it was not "physically annexed" to any building. *Id.* ¶¶ 10-11. In so holding, we relied on *McDonald v. City of Portland*, 2020 ME 119, 239 A.3d 662. *Klein*, 2022 ME 17, ¶¶ 10-11, 271 A.3d 777; *see also Sanford*, 2004 ME 73, ¶ 11, 850 A.2d 325; 14 M.R.S. § 8104-A(2). But in *McDonald*, the area where the plaintiff fell was clearly part of the building. *See McDonald*, 2020 ME 119, ¶¶ 1-5, 239 A.3d 662. Indeed, we noted that "whether the plaza is an external part of the building or an appurtenance to the building is a distinction without a difference." *Id.* ¶ 14. Physical annexation to a building was *present* in *McDonald*, but it was never before a *requirement* under 14 M.R.S. § 8104-A(2).

[¶31] We further noted in *Klein*:

> Even if the parking lot were annexed to one of the public buildings, however, it would not satisfy the remaining factor necessary to the definition of a fixture. The parking lot is not "adapted to the realty" because it is not unique or integral to Holmes Hall or Fogler Library in any way. Many buildings border parking areas that facilitate the arrival and departure of visitors to the building, and there is no factual basis upon which to determine that this parking lot serves any special purpose—it does not serve

as an entryway to any building, and it has no designated purpose other than parking.

2022 ME 17, ¶ 13, 271 A.3d 777 (citations omitted).  I erred by joining the opinion in *Klein*.  I should have concurred in the result but not the reasoning.  I agree that the parking lot in *Klein* was not within an exception to immunity, because it was not appurtenant to any particular public building.  It was simply a public parking lot.[11]

[¶32]  It is worth going back to the actual language we employed in *Searle* to understand why the Runway may fairly be characterized as an appurtenance and why the language we used in *Klein* is far too sweeping.  We said in *Searle*:

> There is no single criterion by which an object can be deemed a fixture.  However, common law authorities uniformly start with the proposition that objects change from being personal property to being fixtures when they have become so closely connected to land that they are regarded as an irremovable part of the real property with which they are associated.  An object has made this shift when it is (1) physically annexed, *at least by juxtaposition*, to

---

[11]  Indeed, the parking area in *Klein* could be viewed as governed by another section of the Maine Tort Claims Act:

> A governmental entity is liable for its negligent acts or omissions arising out of and occurring during the performance of construction, street cleaning or repair operations on any . . . parking area . . . . A governmental entity is not liable for any defect, lack of repair or lack of sufficient railing in any . . . parking area, causeway, bridge, airport runway or taxiway or in any appurtenance thereto.

14 M.R.S. § 8104-A(4) (2025).  This section, specifically addressing parking areas, makes clear that the result in *Klein* was correct.  Thus, we probably should not have undergone an appurtenance analysis under section 8104-A(2) and instead should have analyzed the issue under section 8104-A(4). *See Ziegler v. Am. Maize-Prods. Co.*, 658 A.2d 219, 222 (Me. 1995) (noting that "specific statutory provisions take precedence over general provisions").

the realty or some appurtenance thereof; (2) adapted to the use to which the land to which it is annexed is put; and (3) annexed with the intention on the part of the person making the annexation to make it a permanent accession to the realty.

. . . .

The second element of the fixture test, adaptation of the object to the use of the land, is met when the object and the real property are united in the carrying out of a common enterprise. Items of personal property are united to the realty if they contribute to the purposes of the realty in the sense that they are necessary or useful for the proper operation or utilization of the realty.

. . . .

Finally, to determine the owner's intent, the controlling intention is not the owner's stated intent at the time of acquisition, or some unspoken plan for the future of the structure or the property, but the intention that the court deduces from external facts. In other words, the test for intent is an objective one based on the totality of the circumstances. In determining intent, courts consider, among other factors:

(1) The mode of annexation;

(2) The removability of the article without injury to the premises;

(3) The extent to which the article is specially adapted to the premises;

(4) The extent to which the [owner] has treated the article as an essential part of the premises . . . ; [and]

(5) The actual essentiality of the article to the accustomed use or operation of the premises . . . .

2010 ME 89, ¶¶ 16, 19, 21, 3 A.3d 390 (emphasis added, citations and quotation marks omitted).

[¶33]  The Court's opinion morphs these elements into something different.  The Court now holds that the Runway, a paved area of the ground, is not an appurtenance because it satisfies none of the three elements of the fixture test.  Court's Opinion ¶ 25.  To the contrary, I believe all three elements are met.

[¶34]  The Court states that the Runway is not "physically annexed to any of the correctional center's buildings" and "is, at best, contiguous to one or more of them."  Court's Opinion ¶ 21.  But *Searle* required only that an appurtenance be "annexed, *at least by juxtaposition*, to the *realty*."  2010 ME 89, ¶¶ 14, 16, 3 A.3d 390 (emphasis added and quotation marks omitted).  That includes being contiguous.  *See Klein*, 2022 ME 17, ¶ 39, 271 A.3d 777 (Jabar, J. dissenting) ("Juxtaposition means 'an instance of placing two or more things side by side or near one another.' *Juxtaposition*, Black's Law Dictionary (11th ed. 2019).  An object can be physically annexed, then, by being actually attached . . . or by being . . . contiguous . . . .").  There can be no question that the Runway is both annexed to the realty upon which the correctional center sits and annexed by juxtaposition to the building Rinaldi was going in and out of.

24

[¶35]  The court also concludes that the Runway is not "adapted to the buildings of the correctional center" because it was not "specially designed, manufactured, or modified for use with any of the correctional center buildings."  Court's Opinion ¶ 23 (citing *Searle*, 2010 ME 89, ¶ 20, 3 A.3d 390).  However, applying the language in *Searle* to these facts makes it apparent that the Runway and the buildings "are united in the carrying out of a common enterprise" and the Runway is "necessary or useful for the proper operation or utilization of the realty."  2010 ME 89, ¶ 19, 3 A.3d 390 (quotation marks omitted).  The Runway runs through the center of the correctional facility and is the means by which inmates move about the facility—making it not only useful but necessary for its operation.  The placement of the Runway at the center of the locked facility makes it inherently adapted to the buildings, unlike other "improved paths or ways that merely provide convenient pedestrian or vehicular travel to governmental buildings."  *See* Court's Opinion n.9.  Unlike pedestrians or vehicles on a public way, inmates in a correctional facility do not have the option to choose a more convenient route.  The record here reflects this: Rinaldi, as the majority concedes, "needed to walk along" the Runway to reach the cafeteria from his dormitory.  Court's Opinion ¶ 4.

[¶36]  The Court ignores the intent-determinative factors outlined in *Searle* to conclude that "nothing in the record suggests that the Runway was intended to be irremovable from the realty.  The simple fact that the Runway is not annexed to the correctional center's buildings means that it is not physically irremovable."  Court's Opinion ¶ 24.  But that is disingenuous.  Of course a paved area can be demolished and removed—as can any building.  The Court's opinion turns the analysis on its head by rendering meaningless the factors in *Searle*, which, inter alia, require a consideration of the "mode of annexation" as well as "[t]he removability of the article without injury to the *premises*."  *See* 2010 ME 89, ¶ 21, 3 A.3d 390 (emphasis added).  The Runway is not at all removeable in the same way as a trash bin or bleachers.  *See Searle*, 2010 ME 89, 3 A.3d 390 (bleachers); *Sanford*, 2004 ME 73, 850 A.2d 325 (trash bin).  Rather, the Runway's mode of annexation leads to the conclusion that the Runway is intended to be long-lasting, and tearing it out would certainly cause damage to the premises.

[¶37]  The Court correctly concludes that the Runway has been treated "as an essential part of the premises because it is used as the predominant path of movement for inmates between the correctional center's buildings."  *See* Court's Opinion ¶ 24.  The Court should have also concluded that the Runway

is actually essential to the correctional center's operation given that the "accustomed use" of the Runway is inmate movement through the facility. *See Searle*, 2010 ME 89, ¶ 21, 3 A.3d 390 (quotation marks omitted).

[¶38]   Contrary to the analysis in the Court's opinion, the Runway is contiguous to the buildings, affixed to the ground, and irremovable without injuring the land.  It is specially adapted and essential as the means by which the prisoners *must* move about and is treated as essential to that purpose by the correctional center.[12]

[¶39]   Finally, although the Court's opinion declines to address whether the correctional center buildings are public buildings for the purposes of the MTCA, *see* Court's Opinion n.1, I have no such hesitation.  We have previously treated the very same prison as a public building for purposes of 14 M.R.S. § 8104-A(2).  *See Roberts v. State*, 1999 ME 89, ¶¶ 10-11, 731 A.2d 855

---

[12]   The Court's opinion posits that if the Runway were an appurtenance, "then every street, thoroughfare, or paved pathway that currently provides a travel route to the door of any state, county, municipal, or other governmental building would, according to the logic of the dissent, be deemed to be an appurtenance to a building for which the governmental entity owning the building may not assert immunity."  Court's Opinion n.10.

The Runway, however, is distinguishable from other travel routes because it is fully enclosed within the locked correctional facility, and inmates have no choice but to traverse the Runway to get from one part of the facility to another.  Because the purpose of a correctional facility is to house inmates, the inmates' use of the Runway is essential to the facility's operation, and it is therefore adapted to the realty.  *See Searle v. Town of Bucksport*, 2010 ME 89, ¶ 19, 3 A.3d 390.

(acknowledging that the negligent maintenance of a cell door would subject the state to liability under section 8104-A(2)).

[¶40] Even if we wanted to revisit the issue, the correctional center meets the criteria for a public building: it is owned by the government, is under state control, provides services to the public, and is accessible to volunteers, professional visitors, and citizen visitors, albeit in a limited fashion.[13] *See Rodriguez v. Town of Moose River*, 2007 ME 68, ¶¶ 32-35, 922 A.2d 484. Many admittedly public buildings are not fully accessible to all members of the public at any time: courthouses, police stations, and schools all restrict members of the public from many areas in buildings. And yet, we have held that public buildings under the MTCA include public schools, *Donovan v. City of Portland*, 2004 ME 70, ¶¶ 4, 10, 15, 850 A.2d 319; *Peterson v. City of Bangor*, 2003 ME 102, ¶ 7, 831 A.2d 416, state university buildings, *Klein*, 2022 ME 17, ¶ 9-12, 271 A.3d 777, and enclosed trash transfer station buildings*, Adriance v. Town of Standish*, 687 A.2d 238, 240 (Me. 1996). *See also Campbell v. Washington Cnty. Tech. Coll.*, 219 F.3d 3, 5-6 (1st Cir. 2000) (college buildings). Moreover, a building need not be open to the public without restriction to be a public

---

[13] And would we suggest that people incarcerated by the State are not part of the public?

building. *See Lovejoy v. State*, 544 A.2d 750, 751 (Me. 1988) (declining to decide whether a "public building" must be open for general public use).

[¶41] In summary, I understand that exceptions to immunity are strictly construed. *E.g., McDonald*, 2020 ME 119, ¶ 12, 239 A.3d 662; *see* Court's Opinion ¶ 13. I do not disagree with our cases before *Klein*, or even the result in *Klein*. But now the Court has construed the exception to immunity contained in section 8104-A(2) so strictly as to do away with it by requiring that an appurtenance actually be part of the building. The common definitions of "appurtenance" or "appurtenant" include "an accessory or other item associated with a particular activity or style of living," *Appurtenance*, New Oxford American Dictionary (3d ed. 2010); "belonging; pertinent," *Appurtenant*, New Oxford American Dictionary (3d ed. 2010); or "[s]omething associated with another, more important thing" or "[a] right, privilege, or property that is considered incident to the principal property for purposes such as passage of title, conveyance, or inheritance," *Appurtenance*, American Heritage Dictionary of the English Language (5th ed. 2016). The Runway meets these definitions, and meets the definitions contained in *Searle* and prior cases. I would affirm.

Aaron M. Frey, Attorney General, and Connor R. Cobean, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellants Maine Correctional Center, Department of Corrections, and State of Maine

Carly R. Cosgrove, Esq. (orally), Hardy, Wolf & Downing, P.A., Lewiston, for appellee Josh Rinaldi

Androscoggin County Superior Court docket number CV-2022-134
FOR CLERK REFERENCE ONLY